MERCANTILE MUTUAL INSURANCE COMPANY *v.* CALEBS *et al.*

A common carrier may, by contract with the owners, secure to himself, in case of damage or loss to the goods for which the carrier would be liable, the benefit of any insurance to be effected by the owner.

The abandonment to the insurers against marine perils of goods damaged during their transportation, under such a contract, does not give to the insurers any right of action against the carrier.

APPEAL from the Supreme Court. The plaintiff was underwriter on several policies of insurance upon goods shipped on board the defendant's boats, in the city of New York, in September, 1852, by several merchants, to be delivered at different ports in the Western States. The defendants were common carriers, doing business under the name of the American Transportation Company. It was alleged in the complaint that the goods were damaged and wholly lost to the firms on whose account they were shipped, through the carelessness and negligence of the defendants: that being so lost they were wholly abandoned to the plaintiff; and that the plaintiff, in consequence thereof, paid to the owners the value of their goods, and ten per cent in addition: that by reason thereof, the plaintiff became subrogated to all the rights of the firms, and it claimed from the defendants the amounts it had thus paid.

The defendants denied that the goods were lost through negligence, and set up a special contract, between them and each of the firms shipping the goods, by which they were to transport all goods which the firms should have, at reduced prices, and that in consideration of such reduction, the firms should take the risk of loss or damage from the dangers of lake and river navigation, fire, breakage, leakage, &c. The agreement also contains this clause: " In case of loss or damage for which the party of the first part (defendants) may be liable, they shall have the benefit of any insurance by or for account of the party of the second part (the firms insured by the plaintiff), and should the said goods be damaged or destroyed by accident or fire, the freight and charges to and at the place where such loss may happen, shall be paid by the party of the second part."

The action was tried without a jury, and the justice found the following facts: The goods were delivered to the defendants as common carriers, by their respective owners, under the special agreement above recited and set out in the answer: while the goods were in process of transportation on board of a vessel, and in the possession of the defendants, they were damaged to the amount of $2,373.72, by collision with another vessel on the Erie Canal: the goods, at the time of

Mercantile Mutual Insurance Company *v.* Calebs.

said damage, were insured by the plaintiff for the respective owners, and after such damage the owners abandoned the same to the plaintiff: the plaintiff thereupon paid to the respective owners the full value and invoice price of the goods, having no knowledge of the special agreement in respect to insurance under which they had been shipped. The justice found and decided as matters of law from these facts, that such abandonment and payment would have subrogated the plaintiff to all the rights and interests of the owners, and would have vested in it all rights to the said goods, and all the claims which the owners of said goods had against the defendants for the damage to the goods, but for the clause contained in the agreements with the owners; but that by reason of such clause the plaintiff took no right of action against the defendants for the damage to the goods.

Judgment was entered for the defendants with costs, which was affirmed at general term in the first district, and the plaintiff appealed to this court.

*Alfred Dickinson*, for the appellant.

*Mortimer Porter*, for the respondents.

ALLEN, J. If there had been no special agreement between the insured and the defendants, under the facts as found, the plaintiffs would undoubtedly have been entitled to recover, if the defendants were liable for the loss of the goods. The defendants received the goods to carry, as alleged in the complaint, and while in their possession they were so damaged, by a collision of the boat in which they were with another boat, that the goods were brought back to the city of New York. When they arrived there, they were found to be in such a state that they were abandoned by the owners to the plaintiffs. They were sold at auction, and the proceeds paid over to the plaintiffs by the consent of the defendants. The sales amounted to $2,403.19, which was less than that paid by plaintiffs on the policies, by $2,373.72, for which they brought their action. If

the case stopped here, the plaintiffs would bring themselves within the decision in the case of *The Atlantic Insurance Company* v. *Storrow* (5 *Paige*, 285), where the Chancellor said: "Upon an abandonment and payment, or upon a recovery as for a total loss, the underwriters are entitled to subrogation, at least in equity, to all the rights and remedies which the assured has to the property which is not actually destroyed, including the *spes recuperandi* from any other source, unless the underwriters have relinquished that right by a stipulation in the policy." The same rule is reiterated in *Rogers* v. *Hosack's Executors* (18 *Wend.*, 319), and also in *Ætna Fire Insurance Company* v. *Tyler* (16 *id.*, 385).

The abandonment has all the effect of an assignment by the insured, where the assignee would become possessed of all the rights against the carrier which the insured possessed, at the time of the assignment, and no more. The question then arises, was the special contract between the insured and the defendants a valid one, and if so what is its effect upon the plaintiffs' right to recover. It has been frequently decided that a common carrier may by special contract, limit, restrict or modify his common law liability as an insurer of the transportation of goods. In the case of *Gould* v. *Hill* (2 *Hill*, 623), a majority of the court held otherwise, but this court in *Dorr* v. *The New Jersey Steam Navigation Company* (1 *Kern.*, 485), held the contrary, and overruled the case of *Gould* v. *Hill;* and it had previously been repudiated in *Parsons* v. *Monteath* (13 *Barb.*, 353), and in *Moore* v. *Evans* (14 *id.*, 524). (See also 6 *How. U. S. R.*, 344.) The court in all these cases say that they see no reason, why parties may not contract as they please in reference to the transportation of goods: that such an agreement neither changes nor interferes with any rule of law, and does not affect public morals or conflict with public interests. If the owner chooses to take upon himself part of the risk of transportation, and thereby induces the carrier to convey for a less rate of compensation, who has any right to complain? It is a matter entirely between themselves, unless it is the result of a scheme to defraud third persons. It has long been determined,

both in England and in this country, that such an agreement is valid and binding, and in the absence of fraud can at all times be enforced. It is equally well settled, that common carriers have an insurable interest in the goods they transport, and can contract for the benefit of insurance effected by the owners. (*Chase* v. *Washington Marine Ins. Co.*, 12 *Barb.*, 595; *Van Natta* v. *Security Ins. Mut. Co.*, 2 *Sandf.*, 490.)

In this case, the agreement was that in case of loss or damage for which the defendants might be liable, they should have the benefit of any insurance by or for account of the insured. This benefit was secured to them in consideration, in part, of the reduced rates of the price of transportation of the goods, of which the insured had the benefit. It is argued, that this clause in the contract did not exempt the carriers from liability to the plaintiffs, because it was made without their knowledge or consent and was an attempted fraud upon their rights. But this is not so in point of fact, so far as the defendants are concerned. The contract between them and the insured was made before any insurance was obtained, and though it sought to secure a right to the defendants in case policies were procured, yet on their part no fraud was contemplated on the plaintiffs: none is found by the court. It is true the case states that the plaintiffs did not know of the contract when they issued their policies: that that was a matter between them and the insured. If there was any fraudulent concealment of facts on the part of the latter, at the time they obtained their insurances, it would have avoided the policies and they would not have been bound to pay the loss. If they paid it voluntarily, they are not entitled to be subrogated. (*Wilson* v. *Harper*, 1 *Comst.*, 586.)

The contract, therefore, having been lawful, and tainted with no fraud, the plaintiffs could only take it from the insured, with such rights as they had against the carriers, and inasmuch as they may insure against the risk which they incur, though they may be liable to the owners, they may recover against the insurers. In this case it is not proved or found, that the goods were lost through the negligence of the defendants as averred

in the complaint. The only finding on that point is that the damage to the goods occurred in consequence of an injury to the boats in which the goods were, on the canal. It does not appear from this, that the defendants were primarily liable for the loss of the goods; and most clearly, unless they were, the plaintiff would not be entitled to recover. The whole of the plaintiff's argument proceeds upon this assumption, and yet there is not enough in the case to show this liability.

But it is enough that the plaintiffs took the rights of the owners of the goods subject to all agreements and equities between the insured and defendants; and that, the contract between them being valid, protects the latter against a recovery by the plaintiff.

The judgment must be affirmed.

The court expressed no opinion upon the question whether, in the absence of the special agreement, the insurers would have been subrogated to any right of action which the insured might otherwise have had against the carrier; all the judges (except SELDEN, J., who was absent) concurring, with this reservation.

Judgment affirmed.