WILLIAM ADAMS et al., Appellees, v. HARTFORD FIRE INSURANCE COMPANY, Appellant.

INSURANCE: Avoidance—Conflict Between Policy and Shipping Contract. An insured shipper of stock who agrees in the policy that, upon payment of his loss, the insurer shall be subrogated to the insured's right of action against the delinquent carrier, and that he (the insured) will not, on penalty of avoiding the policy, do any act tending to defeat such right of subrogation, does not avoid his policy or in any manner affect it by contracting in the contract of shipment to the effect that, in case of loss on the shipment, the delinquent carrier shall have the benefit of said insurance "*so far as this shall not avoid the policy.*"

*Appeal from Sioux District Court.*—C. C. BRADLEY, Judge.

JUNE 23, 1922.

ACTION to recover for loss of live stock in transit, under a policy of insurance against such loss. Facts appear in the opin-

ion.  Judgment was entered against defendant, on election to stand on demurrer to petition.  Defendant appeals.—*Affirmed.*

*Klay & Klay,* for appellant.

*Snell & Randall,* for appellees.

ARTHUR, J.—The plaintiffs are dealers in and commercial shippers of live stock of all kinds, including hogs, from various stations and points in western Iowa, to the market at the Union stockyards at Chicago, Illinois.  On the 3d day of March, 1919, the defendants executed and delivered to the plaintiffs a policy of insurance whereby the defendant insured the plaintiffs against loss or damage to all live stock, including hogs, which might be shipped by the plaintiffs during the life of said policy, while in transit from points of shipment shown in the bill of lading to the Union stockyards at Chicago, Illinois.  Section 10 of said policy, after providing, in substance, that the insurance company, upon paying a loss suffered by the assured, would be subrogated to all the rights and claims for such loss against any person, vessel, town, or corporation causing such loss, provided specifically as follows:

"Failure so to do or any act of the assured, whether before or after a loss, waiving or transferring or tending to defeat or decrease any such claim against any person or persons, vessel, town, or other corporation, or any government, shall be deemed to be a violation of the terms of this contract and shall void this contract as to any shipment or shipments of live stock concerning which such act of the assured may have been performed. Furthermore, if in such case any sum or sums shall have been paid by this company on account of such loss or damage, or if any expense shall have been incurred for the recovery of same, all of such sum or sums shall be recoverable against the assured and shall be a lien upon all live stock at any time insured hereunder."

On the 16th day of July, 1921, while this policy of insurance was in full force and effect, plaintiffs delivered to the Chicago & Northwestern Railway Company, a common carrier, at Vail, Iowa, for transportation to the commission firm of Murray

& McDonald, at the Union stockyards at Chicago, Illinois, 57 head of hogs, which were loaded into one car. At the time the plaintiffs delivered said hogs to the said carrier, they entered into a written shipping contract. Section 11 of said shipping contract provides as follows:

"Any carrier or party liable on account of loss or death of or injury to any of said live stock shall have the full benefit of any insurance that may have been effected upon or on account of said live stock, so far as this shall not avoid the policies or contracts of insurance."

While the shipment was in transit between Vail, Iowa, and Chicago, Illinois, seven of said hogs were killed, by the negligence of the Chicago & Northwestern Railway Company. The fair, reasonable market value of the seven hogs which were killed by the negligence of the said Chicago & Northwestern Railway Company was $252. Payment of the loss was refused by the insurance company, on the grounds that the shipper had violated Section 10 of the policy of insurance, and had waived, transferred, tended to defeat, and did defeat the insurance company's claim against the Chicago & Northwestern Railway Company, whose negligence caused the loss; and that the plaintiffs, the insured, by making the shipping contract with the carrier, containing Section 11, had destroyed the defendant's right of subrogation against the Chicago & Northwestern Railway Company. To recover this loss, plaintiffs brought this suit in the district court of Sioux County, Iowa, and filed a petition alleging these facts, and made copies of the insurance contract and the shipping contract a part of their petition.

To this petition defendant filed a demurrer, averring that the plaintiffs were not entitled to recover, for the reasons that they had violated the provisions of Section 10 of the policy, heretofore set out, by entering into a shipping contract, which has already been set out in the statement of facts, and that, by entering into said Section 11 of the shipping contract, the plaintiffs tended to defeat and did defeat the right of the defendant, on payment of the loss to the plaintiffs, to recover against the carrier; and also for the reason that, under Section 10 of the contract or policy of insurance, and Section 11 of the shipping

contract, if the defendant had paid the loss to the plaintiffs, this act would constitute a waiver of the defendant's rights to refuse payment, and would estop the defendant, after making this payment, from demanding payment from the carrier for the damages, if any, caused by the carrier's negligence.

The court overruled the demurrer. Defendant elected to stand on the demurrer, and judgment was entered for the amount claimed in the petition, from which ruling and judgment defendant prosecutes this appeal.

The first assignment of error is the broad statement that the court erred in overruling defendant's demurrer.

The second assignment is that the court erred in not holding that the plaintiff had voided its policy of insurance as to the particular assignment in question, and defeated its right to recover, by entering into a written contract of shipment with the railroad company, containing Section 11 of the shipping contract or bill of lading, which provides as follows:

"Any carrier or party liable on account of loss or death of or injury to any of said live stock shall have the full benefit of any insurance that may have been effected upon or on account of said live stock, *so far as this shall not void the policies or contracts of insurance.*"

The third assignment is that the court erred in not holding that, under the provisions of Section 10 of the contract of insurance (which, after providing, in substance, that the insurance company, upon paying a loss suffered by assured, would be subrogated to all the rights and claims for such loss against the railroad causing such loss, provided, in effect, that "waiving or transferring" by the insured of its claim against the railroad company "shall be deemed to be a violation of the terms of this contract of insurance," and "shall void this contract as to any shipment of live stock concerning which such act of the insured may have been performed"), and Section 11 of the shipping contract above quoted, payment of the loss under the policy by the defendant to plaintiff would constitute a waiver of the insurance company's right to refuse payment, and would estop the insurance company, after making such payment, from demanding payment from the railroad company for damages

caused by the negligence of such carrier; and that the plaintiff shipper by that act defeated any right of action it had to recover against the defendant insurance company.

The first task confronting us is the construction of Section 11 of the shipping contract, to determine its effect upon Section 10 of the policy of insurance. It must be conceded (under the authorities it is conceded by both parties to this action) that, if plaintiffs had entered into a shipping contract containing Section 11, minus the clause "so far as this shall not avoid the policies or contracts of insurance," such contract would have defeated plaintiff's right of recovery. It is the position of defendant that Section 11 as it stands in the shipping contract, with the clause in it, "so far as this shall not void the policies or contracts of insurance," voids, or rather violates and avoids, the policy of insurance, and defeats plaintiff's recovery. Plaintiff takes the position that the contract of insurance was in no way affected by Section 11 of the contract of shipment, because the carrier, by said Section 11, never contracted with plaintiff shipper that it should have the benefit of such insurance; that the clause, "so far as this shall not void the policies or contracts of insurance," completely nullifies the benefit provision appearing before such clause in said Section 11; and that Section 10 of the policy remained unharmed and unaffected, the same as if Section 11 of the shipping contract had been absent. Analysis of this proposition inclines us to inquire as to the inclusion of Section 11 in the shipping contract. The act of Congress known as the Carmack Amendment requires carriers to execute and deliver to the shipper a receipt, bill of lading, or contract covering each shipment; and this was done in this instance. We assume that as a standard shipping contract it contained Section 11. It has been frequently and uniformly held that the carrier has an insurable interest in freight carried by it, sufficient to warrant its being made the beneficiary of insurance by the shipper. *Phoenix Ins. Co. v. Erie & W. Trans. Co.*, 117 U. S. 312; *Luckenbach v. McCahan Sugar Ref. Co.*, 248 U. S. 139; *Wager v. Providence Ins. Co.*, 150 U. S. 99. It has further been held that the fact that such insurance is against the carrier's negligence does not void it. *Phoenix Ins. Co. v. Erie & W. Trans.*

*Co.*, supra; *Luckenbach v. McCahan Sugar Ref. Co.*, supra; *Wager v. Providence Ins. Co.*, supra; 1 Michie on Carriers, Section 1024.

It has also been held that covenants in the contracts or bills of lading giving to the carriers the benefit of such insurance by the shipper are valid. *Mercantile Mut. Ins. Co. v. Calebs*, 20 N. Y. 173; *Fayerweather v. Phoenix Ins. Co.*, 118 N. Y. 324; Joyce on Insurance, Section 3548; *Phoenix Ins. Co. v. Erie & W. Trans. Co.*, supra; 1 Michie on Carriers, Section 1024.

It has been uniformly held by courts passing upon the question that a provision in the shipping contract providing, in effect, that the carrier liable for any loss or damage shall have the full benefit of any insurance which may have been effected upon goods in transit, is a valid stipulation; that such provision is not unjust or unreasonable, and that it is not against public policy; that it is not permitting the carrier to contract either against its own negligence or its common-law liability; and that the effect of such stipulation is to defeat the insuring company's right of subrogation to proceed against the carrier causing the loss, upon the payment of the loss to the insured, the shipper; and that the insurance company in such cases cannot maintain any action against the carrier. *Phoenix Ins. Co. v. Erie & W. Trans. Co.*, supra; *Mercantile Mut. Ins. Co. v. Calebs*, supra; *Platt v. Richmond Y. R. & C. R. Co.*, 108 N. Y. 358 (15 N. E. 393); *Missouri Pac. R. Co. v. International Marine Ins. Co.*, 84 Tex. 149 (19 S. W. 459); *Wager v. Providence Ins. Co.*, supra.

The insurance clause in these shipping contracts involved in the cases above cited was substantially the same as Section 11, involved in the instant case, except this marked difference: such shipping contracts did not contain the clause appearing in Section 11 reading, ''so far as this shall not void the policies or contracts of insurance.'' Otherwise, the provisions are very similar. As before said, in stating plaintiff's position, plaintiff shipper predicates its right of recovery upon the theory that the last clause of Section 11 of the shipping contract, ''so far as this shall not void the policies or contracts of insurance,'' in effect eliminated the whole of Section 11 from the contract, when it is considered in its application to Section 10 of the policy.

It may be relevant to observe in this discussion that it is uniformly held that the carrier cannot compel the shipper to procure insurance upon freight while in transit, for the carrier's benefit, as this would be against public policy, and would be permitting the carrier to contract against its own negligence. *Willock v. Pennsylvania R. Co.,* 166 Pa. 184; *The Hadji,* 20 Fed. 875.

Pursuing further the doctrine announced in the cases cited last above, if the carrier cannot compel the shipper to insure his live stock while in transit, then certainly the carrier could not compel the shipper to procure any certain kind of insurance; neither could the carrier compel the shipper to procure insurance that would inure to its benefit. This was decided in the case of *Bradley v. Lehigh Val. R. Co.,* 153 Fed. 350, where the court, speaking through Justice Wallace, said:

"Notwithstanding the stipulation in the bill of lading, Nourse & Company were under no legal obligation to effect any insurance for the benefit of the railroad company. The carrier is undoubtedly entitled by a stipulation in his contract to reserve to himself the benefit of any insurance which the shipper may effect or may have effected on the goods, although he thereby shifts from himself to the insured the loss for which he is primarily responsible; but any stipulation which requires the shipper to procure insurance for the benefit of the carrier in case of loss is void. *Inman v. South Carolina R. Co.,* 129 U. S. 139 (9 Sup. Ct. 249, 32 L. Ed. 612); *The Hadji,* 22 Blatch 235 (20 Fed. 875). The same reasons which forbid the enforcement of a stipulation requiring the shipper to insure for the benefit of the carrier would forbid the enforcement of one requiring him, when he does effect insurance, to procure such as will protect the carrier. The shipper cannot be circumscribed in his liberty to make such a contract with the insurer as he chooses. If he sees fit to make one which may be worthless to the carrier, it is his right to do so."

On the propositions of fact and law hereinbefore stated, we think the shipper, by entering into, as he did, Section 11 of the shipping contract, containing the provision "so far as this shall not void the policies or contracts of insurance," did not

intend to deprive the insurance company of the right of subrogation, on payment of the loss covered by the policy. And it must be manifest that the railroad company, by Section 11 of its shipping contract, containing the clause ''so far as this shall not void the policies or contracts of insurance,'' did not intend to have the shipper breach his policy of insurance. If the policy of insurance would be rendered invalid, it would be unavailing to the shipper or anyone else. As the carrier could not compel the shipper to procure insurance upon the live stock in transit, neither could the carrier compel the shipper to effect insurance which would not be valid, by providing that the carrier should have the benefit of any insurance carried by the shipper; and as the shipper only stipulated by Section 11 of the shipping contract that the carrier should have the benefit of such insurance as by its terms was not voided by such a provision, it would seem to be evident, and we reach the conclusion, that the contract of insurance in question was not affected in any way by the provision of Section 11 of the shipping contract, for the reason that the carrier did not stipulate for the benefit of such insurance as was voided by such a stipulation in the shipping contract, and the insurance contract in question remained in the same status as if Section 11 had been omitted from the shipping contract at the time it was made.

Counsel on both sides discuss ably and at length the proposition presented in appellant's third assignment of error, that, had the insurance company paid the loss in question, it would have waived Section 10 of its policy, and would have been estopped thereafter from asserting claim against the carrier by virtue of its right of subrogation. In support of its position on this point, appellant cites *Kalle & Co. v. Morton*, 156 App. Div. 522 (141 N. Y. Supp. 374). This is the only case cited, and is the only case, so far as we know, where a similar provision in the shipping contract contained the additional words, as contained in Section 11 of the shipping contract in question, ''so far as this shall not void the policies or contracts of insurance.'' If construed at all, it was only by innuendo. In the opinion, the clause in the shipping contract, ''so far as this shall not void the policies or contracts of insurance,'' is not mentioned.

The construction of such clause was not sought by the parties. It appears from the opinion that the insurance company, while disclaiming any liability for the loss of the goods in transit, on the ground that the bill of lading violated the policy, had advanced to plaintiff as "a loan" $330, pending the enforcement by plaintiff of its claim against the defendant carrier. All that is directly decided in the case is that such advancement by the insurance company did not constitute payment of the policy, and was not a waiver by the insurance company of defense against suit on the policy. The most that can be claimed is that the court held by innuendo that, if no such provision for such advancement or loan had existed in the policy, and had the insurance company paid the loss, such payment would have constituted a waiver of its rights, and would have prevented the insurance company from recovering from the carrier whose negligence caused the loss.

On this innuendo announced in the *Kalle* case, the defendant in the instant case claims support of its position that, had it paid to the plaintiff the loss involved in this case, it would have waived the provisions of Section 10 of its policy of insurance, and that, if they waived Section 10 of the policy, it would have been estopped from asserting its claim against the Chicago & Northwestern Railway Company, whose negligence, as alleged in plaintiff's petition, caused the loss, for the reason that, the insurance being paid, it then inured to the benefit of the carrier. We think the position taken by defendant is not sustained by the *Kalle* case. If the *Kalle* case may be considered as authority for plaintiff's position, we cannot agree with it.

It is conceded, and it must be, because universally held, that, had not the clause, "so far as this shall not void the policies or contracts of insurance," been added to Section 11, and had the insurance company paid the loss involved, it would then have waived Section 10 of the policy, and would then have been estopped from presenting a claim against the carrier. But we think that this clause, "so far as this shall not void the policies or contracts of insurance," presents an entirely different situation, for the reason that the carrier in the shipping contract did not contract for the benefit of policies such as the one involved

in this case. We therefore hold that the plaintiff, by entering into Section 11 of the contract of shipment, containing, as it does, the clause "so far as this shall not void the policies or contracts of insurance," does not deprive defendant of its right of subrogation provided in the policy, and does not render the policy unenforcible in this suit.

In our view, the question of waiver is not vitally involved in this case. Under our holding, the decision of the case does not turn on this point. Under our holding above announced, the defendant insurance company is liable, and plaintiff is entitled to recover. The railroad company is not a party to this action, and we do not pass upon any right of recovery against it, nor its rights in any litigation. As above stated, in effect, under our holding, we regard the discussion of waiver as not necessary, and as quite academic. We have held, in effect, that plaintiff shipper did not breach the contract of insurance by becoming a contracting party to Section 11 of the shipping contract. Such holding leaves the defendant without defense to this action on the policy. That being true, if defendant had paid the policy, it would have been doing an act legally compellable by this action at law, and it would not have been an act upon which waiver could be predicated. By this holding the insurance company would not have relinquished any right which it would otherwise have continued to enjoy. We have had occasion to define waiver in numerous cases. Broadly speaking, we have defined waiver as a voluntary and intentional relinquishment of a known right. *Ford v. Ott*, 186 Iowa 820; *Schillinger Bros. Co. v. Bosch-Ryan Grain Co.*, (Iowa) 116 N. W. 132; *Moore v. Order of Railway Conductors*, 90 Iowa 721.

Overruling the demurrer to plaintiff's petition was not error. The demurrer was properly overruled. The judgment of the trial court is affirmed.—*Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.