HARTFORD FIRE INSURANCE COMPANY, Appellant, v. JOHN BARTON PAYNE, Director General, Appellee.

**INSURANCE: Live-stock Shipment—Dual Rights of Subrogation.** An insurer who, in insuring an interstate shipment, contracts that, if *he* pays a loss, *he* shall be subrogated to the right of the shipper against the carrier, and that, if the insured does anything to defeat such right, the policy shall be avoided, may, after voluntarily paying such loss, maintain an action for reimbursement **against the** carrier who has contracted with the shipper that, if *it* (the carrier) pays a loss, *it* shall be subrogated to the right of the shipper against any insurer, so far as such latter subrogation of the carrier *"shall not avoid the policy."*

Faville, C. J., dissents.

Headnote 1:   10 C. J. p. 516; 38 C. J. p. 108.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

DECEMBER 11, 1923.

OPINION ON REHEARING APRIL 7, 1925.

ACTION by an insurer of live stock in transit in an interstate shipment, to recover, under the right of subrogation and by virtue of an assignment from the assured, against the carrier, as the party primarily liable for the damage to the shipment, the amount paid by the insurer in settlement of the loss under its policy. A demurrer to the petition was sustained, and the plaintiff appeals.—*Reversed and remanded.*

*C. G. Myers, Rosewater & Mecham, J. A. Williams,* and *Miller, Kelly, Shuttleworth & McManus,* for appellant.

*Tinley, Mitchell, Ross & Mitchell,* for appellee.

*Mitchell & Wisdom, Campbell & Campbell, Burgess & Gill, John C. Wooden,* and *Farr, Brackney & Farr, Amici Curiae.*

VERMILION, J.—The petition alleged that certain hogs were delivered to the director general of railroads, operating the lines of the Wabash Railway Company during the period of Federal control of the railroads, and accepted for transportation over such lines from South Omaha, Nebraska, to St. Louis, Missouri; that, by reason of the negligence of the defendant director general, or his employees, seventeen of such hogs were killed, lost, or destroyed while in transit; that the plaintiff had insured the owner of such hogs against loss or damage to the shipment while in transit, and had paid to the owner the loss so sustained, in the sum of $810.37, and received from the owner an assignment of the claim for damages against the defendant. And the plaintiff, by virtue of such assignment and the right of subrogation provided for in the policy of insurance, asked judgment against the defendant, as agent and director general, for the amount so paid by the plaintiff to the owner. The shipping contract under which the hogs were being transported and the contract of insurance are set out. The policy of insurance contained a provision as follows:

"It is also agreed that the assured in claiming and accepting payment for any loss or damage under this policy thereby and by that act assigns and transfers to this company all right to claims for such loss and/or damage against any person or persons, vessel, town, or corporation, or any government, and shall prosecute therefor at the charge of and for the account of this company, if requested; the sum recovered, to inure to the benefit of this company to the extent, however, only of the amount of the loss or damage and the attendant expenses of recovery paid and incurred by this company. * * * Failure so to do, or any act of the assured, whether before or after a loss, waiving or transferring or tending to defeat or decrease any such claim against any person or persons, vessel, town or other corporation, or any government, shall be deemed to be a violation of the terms of this contract and shall void this contract as to any shipment or shipments of live stock concerning which such act

of the assured may have been performed. Furthermore, if in such case any sum or sums shall have been paid by this company on account of such loss or damage or if any expense shall have been incurred for the recovery of same, all of such sum or sums shall be recoverable against the assured and shall be a lien upon all live stock at any time insured hereunder.''

The shipping contract contained the following provision:

'' Any carrier or party liable on account of any such loss, injury, or delay shall have the full benefit of any insurance that may have been effected upon or on account of said live stock, so far as this shall not avoid the policies or contracts of insurance.''

It thus appears that, by the contract of insurance entered into by the shipper with the insurer, any act on the part of the assured, whether before or after a loss, waiving or transferring or tending to defeat or decrease any claims the assured might have against any person or corporation for any loss of, or damage to, the shipment insured, should be deemed a violation of the terms of the contract of insurance, and render it void as to any shipment concerning which such act on the part of the assured may have been performed, and that, in such case, any sum paid by the insurer on account of such loss or damage should be recoverable from the assured; while, by the contract of shipment entered into between the shipper and the carrier, the carrier was given the full benefit of any insurance that may have been effected upon the shipment, so far as this should not avoid the contract of insurance.

The case presents another phase, or perhaps, more properly speaking, another strategic move, in a protracted contest between insurers, endeavoring to protect a right, given by law or acquired by contract or assignment, to recover from one whose negligence caused the loss they are required by their contract to pay, and carriers, to avoid liability for their negligence to the insurer who has so paid.

We approach the consideration of the question presented by these contracts in the light of certain well established principles that have been announced in the earlier phases of the contest.

From the mere relations of shipper and carrier, and insurer and assured, in the absence of contractual provisions in one

relation affecting rights in the other, the carrier is primarily liable to the shipper for any breach of duty in respect to the shipment, and the insurer would be liable for any loss covered by its contract of insurance, and would have a right, upon paying the loss, under the familiar doctrine of subrogation, or by assignment from the assured, to recover from the carrier upon its primary liability. The carrier may not, generally speaking, by contract relieve itself from liability to the shipper, and may not require the shipper to take out insurance for its benefit; for that would be, in effect, requiring the shipper to indemnify the carrier from liability for its own negligence. *Willock v. Pennsylvania R. Co.*, 166 Pa. 184 (30 Atl. 948, 27 L. R. A. 228, 45 Am. St. 674); *Inman v. South Carolina R. Co.*, 129 U. S. 128 (32 L. Ed. 612); *Bradley v. Lehigh Valley R. Co.*, 82 C. C. A. 426 (153 Fed. 530).

The carrier, however, has an insurable interest in the shipment, and may, therefore, enter into a valid contract with the shipper that, in case the latter does procure insurance on the shipment, the insurance will inure to the benefit of the carrier. *Phoenix Ins. Co. v. Erie & Western Trans. Co.*, 117 U. S. 312 (29 L. Ed. 873); *Luckenbach v. McCahan Sugar Refining Co.*, 248 U. S. 139 (63 L. Ed. 170); *Mercantile Mut. Ins. Co. v. Calebs*, 20 N. Y. 173; *Jackson Co. v. Boylston Mut. Ins. Co.*, 139 Mass. 508 (2 N. E. 103).

When the carrier avails itself of the right to contract with the shipper that any insurance effected by him upon the shipment shall inure to the benefit of the carrier, it results that the carrier, while not relieved of its primary liability to the shipper, is, upon satisfying such liability, entitled to recover against the insurer upon the contract of insurance made for its benefit (*Platt v. Richmond Y. R. & C. R. Co.*, 108 N. Y. 358 [15 N. E. 393]); and the insurer can, on paying the loss, acquire no right, by subrogation or assignment from the shipper, to recover against the carrier. *Phoenix Ins. Co. v. Erie & Western Trans. Co.*, supra; *Wager v. Providence Ins. Co.*, 150 U. S. 99 (37 L. Ed. 1013); *Carstairs v. Mechanics' & Traders' Ins. Co.*, 18 Fed. 473; *Insurance Co. of North America v. Easton,* 73 Tex. 167 (11 S. W. 180); *Missouri Pac. R. Co. v. International Marine Ins. Co.*, 84 Tex. 149 (19 S. W. 459); *Jackson Co. v. Boylston*

*Mut. Ins. Co.,* supra; *Platt v. Richmond Y. R. & C. R. Co.,* supra; *Mercantile Mut. Ins. Co. v. Calebs,* supra. It is wholly immaterial to the present inquiry whether the insurer's claim against the carrier is based upon a right of subrogation given by law or secured by contract or upon an assignment; for, if the assured has contracted to give the carrier the benefit of the insurance, he has, and can pass to the insurer, no right inconsistent with such contract. The effect of this, in practical operation, is to relieve the carrier from liability and require the insurer to bear the loss.

But, the insurer's obligation being purely contractual, it has the right to impose such limitations and restrictions upon its liability as may be agreed upon in the contract between it and the assured. It can make a contract that is worthless to the carrier. *Bradley v. Lehigh Valley R. Co.,* supra. When it contracts, therefore, that its undertaking of insurance shall be void if the insurer does anything that operates to deprive it of the right, upon paying the loss, to be subrogated to the rights of the shipper and to recover against one whose act or omission caused the loss, a contract between the shipper and carrier that gives the latter the benefit of the insurance voids the contract of insurance for the shipper, and is ineffectual to secure the benefit of insurance to the carrier. That is to say, the carrier can have no benefit of insurance when there is no valid insurance, and there is no valid insurance when the assured has done a thing which he has expressly stipulated would invalidate it. *Fayerweather v. Phenix Ins. Co.,* 118 N. Y. 324 (23 N. E. 192, 6 L. R. A. 805); *Southard v. Minneapolis, St. P. & S. S. M. R. Co.,* 60 Minn. 382 (62 N. W. 442).

It is to be further observed that, while the insurer and assured are free to contract upon any terms upon which they may agree, with only the limitation, inhering in the nature of the contract, that the assured, the buyer, can buy only where and what he can, and the insurer, the seller, may refuse to sell except upon such terms as it may see fit to make, the same freedom does not exist between shipper and carrier. The carrier is required by Federal statutes (U. S. Compiled Statutes, Sections 8563, 8604-a, and 8604-aa) to issue a uniform bill of lading or shipping contract for interstate shipments, which shall have the

approval of the Interstate Commerce Commission. The shipping contract in question was such as the carrier was required to make.

We have heretofore had before us the question, arising on identical contracts of insurance and shipment, and as between the assured and the insurer, whether the provision of the shipping contract invalidated the policy of insurance. *Adams v. Hartford Fire Ins. Co.*, 193 Iowa 1027. It was there contended by the insurer that the shipping contract giving the carrier the benefit of any insurance upon the shipment ''so far as this shall not avoid the policies or contracts of insurance,'' rendered its contract of insurance void, under the provision of the latter that any act by the assured tending to defeat its right of subrogation should have that effect. We there denied this contention on the part of the insurer, and held it liable to the assured for a loss under the policy, notwithstanding the provisions of the shipping contract. The carrier was not a party to that case; and it is earnestly insisted that, as to the carriers and their rights under the shipping contract, much that was there said was but dictum. It may be conceded that the *Adams* case did not determine the rights of the carrier. It did determine, however, as against the insurer, that its contract of insurance was not invalidated by the shipping contract.

We are now confronted by the proposition whether the insurer, having paid the loss under its policy, as it was required to do under the decision in the *Adams* case, may enforce the primary liability of the carrier by virtue of its right of subrogation, or under its assignment from the assured, or whether that right was lost to it by the provision of the shipping contract. The contract of insurance by its terms is only valid in case the right of the insurer to subrogation is not destroyed by the assured. The decision in the *Adams* case determined, as against the insurer, that its right of subrogation was not destroyed by the shipping contract, and hence the policy was not invalidated. Now the insurer seeks to enforce against the carrier the primary liability for the loss under the right of subrogation, which we held in the *Adams* case was not destroyed. We are not so much concerned with whether what was said in the *Adams* case is dictum, when we come to consider the present

claims of the carrier, as we are with whether that case announced a correct rule of law, and one that must now be applied to the carrier. If we must now so construe the shipping contract as to deprive the insurer of its right of subrogation against the carrier, the *Adams* case, sustaining the validity of the insurance contract because the insurer's right of subrogation was not destroyed, cannot stand. The insurer is not to be held liable on its policy on the ground that its right of subrogation is not lost, and denied a right to recover against the carrier on the ground that it is lost.

We have, therefore, re-examined the question upon the contentions of the carrier, and have reached the conclusion that the construction put upon the shipping contract in the *Adams* case was right, and that, as there found, in order to sustain the right of the assured to recover, it did not operate to destroy the right of the insurer under the policy in question, after having paid the loss, to recover against the carrier upon its primary liability for the loss of, or damage to, the shipment.

The question turns upon the construction and effect of the concluding clause of the quoted paragraph of the shipping contract. That paragraph provides that the carrier shall have the full benefit of any insurance that may be effected on the shipment, "so far as this shall not avoid the policies or contracts of insurance." The effect of giving to the carrier the benefit of the insurance is, as we have seen, to destroy any right of subrogation in the insurer; but the destruction of the right of subrogation invalidates the insurance, under the instant policy. This provision of the shipping contract does not give to the carrier the benefit of *all* valid insurance, but only the benefit of all insurance that would not be rendered invalid by the destruction of the right of subrogation, and gives the carrier no benefit of insurance when to do so would render the insurance invalid. The clause in question speaks of a contingency; not of a result accomplished. If to apply the provision giving the carrier the benefit of the insurance would render the insurance invalid, it is not to be applied, and the insurance contract is not invalidated; but if to apply it would not render the insurance invalid, then it is to be applied, and the carrier is entitled to the benefit of the insurance. That insurance might be procured

that would not, by the terms of the contract, be invalidated by the destruction of the insurer's right of subrogation, is clear; and the carrier, under this provision, would be entitled to the benefit of such insurance. But the provision does not give the carrier the benefit of insurance when to do so would, under the terms of the contract of insurance, invalidate the insurance. As said in the *Adams* case:

"If the policy of insurance would be rendered invalid, it would be unavailing to the shipper or anyone else."

But it is said that the appellant, by paying the loss, has recognized and admitted the validity of the policy, and has waived the provision voiding the policy if its right of subrogation is destroyed by the act of the assured. Passing the obvious fact that the insurer had no choice but to pay, or submit to a judgment against it, under the doctrine of the *Adams* case, this argument loses sight of the further fact that the decision in the *Adams* case was grounded upon the proposition that the insurance was valid because the carrier was not entitled to the benefit of it,—that there might be valid insurance to which the carrier was not entitled; and assumes that, under the shipping contract, the carrier is entitled to the benefit of all valid insurance. But, as we have said, there may be valid insurance to which the carrier is not entitled,—that is, insurance that would only be invalidated by giving the carrier the benefit of it; and the carrier is not given the benefit of all valid insurance, but only of such as would not be avoided by giving it such benefit. The question is not whether there has been a waiver of a provision of the policy rendering it void upon a certain condition, but whether the condition, the thing that will avoid the policy, in fact exists,—whether the insurance is such as the carrier is given the benefit of, under the shipping contract.

For this reason, too, the situation is not analogous to a case where, by the policy, the insurance is made invalid if the assured is not the sole owner of the property, or if it is incumbered, and the insurer, with notice of the incumbrance at the time the policy is issued, is held to have waived the provision. If there is no incumbrance, if the condition of the policy is not in fact broken, there is no place for a waiver. And here, if the carrier is not, by the shipping contract, given the benefit of the

insurance, as we think it is not when to do so would avoid the
policy, the policy was valid, as held in the *Adams* case, and the
insurer waived nothing by voluntarily paying it. By so doing,
it did not give to the carrier a right where none existed before.

We do not regard the relative time of entering into the
contracts of shipment and insurance as of controlling impor-
tance. The contract of insurance was entered into in contempla-
tion of the shipment; and, in view of the requirement that in-
terstate shipments must be made under a uniform shipping con-
tract approved by Federal authority, it may be said to have
been made in contemplation of the very shipping contract in
question. And of this, it may be conceded, the insurer must
take notice. But the shipping contract also contemplates the
possibility of insurance upon the shipment, and makes provision
in respect to a certain sort or character of insurance, and only
in respect to that, and none other. Unless the shipping contract
recognizes the right of the assured to make a contract of insur-
ance that would be invalidated if the carrier were given the
benefit of it, and provides that, in such case, it should not have
the benefit, the clause in question becomes meaningless. The
shipping contract could not, as we have seen, and did not, in
fact, attempt to, dictate or control the kind of insurance the
shipper should procure. The question is whether the insurance
was such as the carrier was given the benefit of, under the ship-
ping contract; or, to put it another way, whether the shipping
contract gave to the carrier the benefit of insurance when to do
so would invalidate it. The clause in question affords the an-
swer, by declaring that the carrier is not given the benefit of
the insurance when to do so would have that effect.

To say that the shipping contract gives to the carrier the
benefit only of such insurance as would not be invalidated by
so doing, and that, where to do so would render the insurance
invalid, the carrier takes nothing thereunder, secures to the car-
rier all that it can in any event obtain,—for invalid insurance
is of no benefit to either it or the shipper; preserves to the in-
surer its freedom to protect by contract its right of subrogation;
and enables the shipper to procure valid insurance without releas-
ing the carrier from its primary liability. In short, effect is thus
given to the concluding clause of the paragraph in question ac-

cording to its terms, when, under the construction contended for by appellee, it is of no effect whatever. *Sinclair & Co. v. National Sur. Co.*, 132 Iowa 549.

It follows that the demurrer to the petition should have been overruled, and the cause is—*Reversed and remanded.*

EVANS, STEVENS, ARTHUR, DE GRAFF, and ALBERT, JJ., concur.

FAVILLE, C. J., dissents.