[Civ. No. 17847.   Second Dist., Div. Two.   Dec. 1, 1950.]

MODE O'DAY CORPORATION (a Corporation), Respondent, v. RINGSBY TRUCK LINES, INC. (a Corporation), Appellant.

George Penney, Robert M. Newell, and Theodore A. Chester for Appellant.

William K. Young for Respondent.

McCOMB, J.—From a judgment in favor of plaintiff after trial before the court without a jury in an action to recover damages for goods destroyed by fire while in the possession of a common carrier, defendant appeals.

*Facts:* On August 6, 1948, plaintiff delivered personal property of the value of $6,356.46 to defendant, a common carrier, at Mason City, Iowa, for transportation to Los Angeles. The goods were shipped under a uniform domestic bill of lading that provided among other things as follows: "Sec. 2(c) Any carrier or party liable on account of loss of or damage to any of said property shall have the full benefit of any insurance that may have been effected upon or on account of said property so far as this shall not avoid the policies or contracts of insurance: PROVIDED, That the carrier reimburse the claimant for the premium paid thereon."

At the time of the shipment there was in effect a policy of insurance issued by the Continental Insurance Company of New York wherein plaintiff was the sole assured and beneficiary. This policy contained among others these provisions: "It is warranted by the Assured that this insurance shall in no way inure directly, or indirectly to the benefit of any carrier or other bailee. . . . This Company may require from the Assured an assignment of all right of recovery against any party for loss or damage to the extent that payment therefor is made by this Company."

The goods were destroyed in transit. On February 1, 1949, plaintiff delivered to the Continental Insurance Company, its insurer, a sworn statement in proof of loss and assigned to the company its claim against defendant. On February 3, 1949, the insurance company paid plaintiff the sum of $5,856.46 in satisfaction of its obligation to it and executed and delivered to it an assignment back of the rights which it had acquired under the assignment of February 1st. On April 21, 1949, the Continental Insurance Company entered into a memorandum agreement with plaintiff by the terms of which it was agreed that the insurance company had advanced $5,856.46 to plaintiff on account of the goods destroyed on condition that such advancement in no way impaired the obligation of defendant to pay for the loss, and that an action be commenced in the name of plaintiff against defendant to recover the amount of the loss.

On January 31, 1949, plaintiff sent defendant a statement showing the sum of $6,419.58 due. Thereafter in February, March and April plaintiff sent defendant statements showing a balance of $500 due. When plaintiff's executives learned of the statements of February, March and April which had been sent through inadvertence they ordered that no further statements be sent to defendant on this account. Defendant

offered to pay plaintiff $500 on April 11, 1949, which offer was refused.

██ *Questions:* First: *Did section 2(c) of the bill of lading, supra, invalidate the provision in the Continental Insurance Company's policy with plaintiff which read, "It is warranted by the Assured that this insurance shall in no way inure directly, or indirectly to the benefit of any carrier or other bailee"?*

This question must be answered in the negative. So far as our research discloses this question has not heretofore been presented to the appellate courts of California. However, in other states the question has arisen. In *Kalle & Co.* v. *Morton,* 156 App.Div. 522 [141 N.Y.S. 374], the New York court held that a provision similar to that in section 2(c) of the bill of lading prevented the shipper's insurer from recovering from the carrier. A contrary conclusion was reached in *Hartford Fire Insurance Co.* v. *Payne,* 199 Iowa 1008 [203 N.W. 4, 39 A.L.R. 1109]. Upon examination of these conflicting cases we are of the opinion that the correct conclusion was reached in *Hartford Fire Insurance Co.* v. *Payne, supra,* where Mr. Justice Vermilion in speaking for the court on page 6 [203 N.W.] says:

"We have therefore re-examined the question upon the contentions of the carrier, and have reached the conclusion that the construction put upon the shipping contract in the Adams Case [*Adams* v. *Hartford Fire Insurance Co.,* 193 Iowa 1027 (188 N.W. 823, 24 A.L.R. 182)] was right, and that, as there found in order to sustain the right of the assured to recover, it did not operate to destroy the right of the insurer under the policy in question, after having paid the loss, to recover against the carrier upon its primary liability for the loss of, or damage to, the shipment.

"The question turns upon the construction and effect of the concluding clause of the quoted paragraph of the shipping contract. That paragraph provides that the carrier shall have the full benefit of any insurance that may be effected on the shipment, 'so far as this shall not avoid the policies or contract of insurance.' The effect of giving to the carrier the benefit of the insurance is, as we have seen, to destroy any right of subrogation in the insurer, but the destruction of the right of subrogation invalidates the insurance under the instant policy. This provision of the shipping contract does not give to the carrier the benefit of all valid insurance, but only the benefit of all insurance that would not be

rendered invalid by the destruction of the right of subrogation, and gives the carrier no benefit of insurance when to do so would render the insurance invalid. The clause in question speaks of a contingency, not of a result accomplished. If to apply the provision giving the carrier the benefit of the insurance would render the insurance invalid, it is not to be applied, and the insurance contract is not invalidated; but, if to apply it would not render the insurance invalid, then it is to be applied, and the carrier is entitled to the benefit of the insurance. That insurance might be procured that would not, by the terms of the contract, be invalidated by the destruction of the insurer's right of subrogation is clear, and the carrier, under this provision, would be entitled to the benefit of such insurance; but the provision does not give the carrier the benefit of insurance, when to do so would, under the terms of the contract of insurance, invalidate the insurance. As said in the Adams Case:

" 'If the policy of insurance would be rendered invalid, it would be unavailing to the shipper or any one else.'

"But it is said the appellant, by paying the loss, has recognized and admitted the validity of the policy, and has waived the provision voiding the policy if its right of subrogation is destroyed by an act of the assured. Passing the obvious fact that the insurer had no choice but to pay or submit to a judgment against it under the doctrine of the Adams Case, this argument loses sight of the further fact that the decision in the Adams Case was grounded upon the proposition that the insurance was valid because the carrier was not entitled to the benefit of it; that there might be valid insurance to which the carrier was not entitled, and assumes that, under the shipping contract, the carrier is entitled to the benefit of all valid insurance."

■ Second: *Is plaintiff seeking double payment for the loss since plaintiff has received $5,856.46 from its insurer?*

This question must also be answered in the negative. It is true that plaintiff received $5,856.46 from its insurer on account of the loss which it has suffered. However, the insurance policy specifically provided that the insurer should be subrogated to the rights of plaintiff and might sue in the name of its assured. It is clear that any recovery allowed in the present action would inure to the benefit of the insurance company and not to plaintiff.

■ Third: *Since plaintiff sent three statements to defendant showing a balance of only $500 due which amount*

*defendant offered to pay to plaintiff, has defendant's liability in excess of such sum been remitted by plaintiff?*

This question must be answered in the negative. The uncontradicted testimony disclosed that the statements were sent defendant through error, and that there was no intention upon the part of plaintiff to remit any sum due and owing from defendant. Further the evidence discloses that immediately upon learning of the mistake plaintiff's executive officers ordered that no further statements be sent defendant.

Affirmed.

Moore, P. J., and Wilson, J., concurred.

A petition for a rehearing was denied December 19, 1950.