Hillsborough,
No. 5300.

## Richard D. Brew & Company, Inc.

*v.*

## Auclair Transportation, Inc.

Argued March 3, 1965.
Decided July 21, 1965.

372

*McLane, Carleton, Graf, Greene & Brown* and *John A. Graf* (*Mr. Graf* orally), for the plaintiff.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Robert E. Dastin* (*Mr. Dastin* orally), for the defendant.

PER CURIAM. The defendant carrier emphasizes the provisions of *s.* 2(c) of the bill of lading and contends according to its terms that it is liable only for the amount of the premium on the insurance policy procured by the plaintiff shipper. The insurance company, which is subrogated to the rights of the plaintiff shipper, emphasizes the provisions of the insurance policy that the insurance shall not "inure directly or indirectly to the benefit of any carrier," and contends that it is not subject to the limitation of liability contained in the bill of lading. These contentions are neither novel nor new and there is some logical support for each. The struggle between insurer and carrier as to which will bear the ultimate burden when insured goods are damaged or lost in transit has been a protracted one. *Phoenix Ins. Co.* v. *Erie Transportation Co.,* 117 U. S. 312; *Luckenbach* v. *McCahan Sugar Co.,* 248 U. S. 139; *The Turret Crown,* 297 Fed. 766 (2d Cir. 1924); Note, Subrogation of an Insurer: The Burden of the Loss of Insured Goods in Transit, 37 Harv. L. Rev. 901 (1924); Vance, Insurance 794-796 (3d *ed.* 1951).

"In the beginning, the insurer of goods in transit was, on paying the insured, subrogated to the insured's claim, as shipper, against the carrier. Then the carrier inserted a stipulation in the bill of lading requiring the shipper to give it the benefit of

any insurance that he might have, and this clause was held to cut off the insurer's right of subrogation even though the loss was due to the carrier's negligence [*Phoenix Ins. Co.* v. *Erie & Western Transp. Co.,* 117 U. S. 312 (1886)]. This decision, which caused all the trouble, was an erroneous application of the perfectly sound principle that the insurer is subrogated only to the extent of the insured's claim against the third party. The carrier did not and could not by stipulation extinguish his liability to the shipper; and if the idea of subrogation is sound, the loss should ultimately fall upon the person who had the greater measure of control over it. However, the decision stood, and the insurers countered by inserting a condition, in policies on goods in transit, that the policy should be void if the insured should contract with the carrier that the latter should have the benefit of the insurance. The carrier has not been successful in counteracting the effect of these stipulations; and under most recent decisions, the ultimate loss falls upon the carrier." Patterson, Essentials of Insurance Law 150 (2d *ed.* 1957).

Contradictory provisions and stipulations in contracts of insurance and carriage must be resolved in spite of logical difficulties. "The apparent circularity of expression may be resolved by interpreting the provision in the bill of lading as entitling the carrier to the insurance if there is no opposing *stipulation* in the policy or contract of insurance, that is, no warranty or provision for avoidance; and not, if there is. Consequently, the insured may recover from the insurer; the insurer is effectively subrogated to his cause of action against the carrier; and the carrier is not entitled to the insurance." Campbell, Non-Consensual Suretyship, 45 Yale L. J. 69, 85 (1935). See *Adams* v. *Hartford Fire Ins. Co.,* 193 Iowa 1027; *Graysonia Rr. Co.* v. *Newberger Cotton Co.,* 170 Ark. 1039; Annot. 39 A.L.R. 1116.

The result of the decisions was succinctly stated in Patterson, Cases and Materials on Insurance 305 (1955) as follows: "The legal impasse created where the insurer of goods in transit stipulated that it should be subrogated to the shipper's right to hold the carrier liable for the loss of the goods, and the carrier in its bill of lading issued to the shipper stipulated that it should be entitled to the benefit of the shipper's insurance, seems finally to have been resolved in favor of the insurer." See *Hartford Fire Ins. Co.* v. *Payne,* 199 Iowa 1008; 6 Appleman, Insurance

Law and Practice, *s.* 4056 (1942); *Mode O'Day Corp.* v. *Ringsby Truck Lines,* 100 Cal. App. 2d 748; 38 Harv. L. Rev. 117 (1924).

We conclude that the answer to the question transferred by the Trial Court without ruling is that the bill of lading does not relieve the defendant of all damages and the liability is not limited to the insurance premium. It follows, on the authorities cited above, that the insurer is effectively subrogated to the shipper's cause of action against the carrier for the damages he sustained. King, Subrogation under Contracts Insuring Property, 30 Tex. L. Rev. 62, 78-81 (1951).

We have examined the record in this case and agree with the conclusion of the Trial Court that competent evidence was submitted to sustain the damage award in the amount of $1,727.61. The action of the shipper in repairing the damaged property in Nevada rather than returning it to New Hampshire was reasonable and the cost of doing it was also reasonable. The expenses which the plaintiff shipper incurred in repairing the damaged property were reasonably incidental to the loss sustained. *Davis* v. *Company,* 77 N. H. 403; *Hutt* v. *Hickey,* 67 N. H. 411. Nor do we find any evidence to support the proposition that the plaintiff shipper failed to make reasonable efforts to curtail his damages. *Novak* v. *Company,* 84 N. H. 93, 96; *Dufton* v. *Bank,* 95 N. H. 299.

The plaintiff's verdict in the amount of $1,727.61 is affirmed and the defendant's exceptions thereto are overruled. This makes unnecessary consideration of other issues raised by the plaintiff for sustaining the verdict.

*Defendant's exceptions overruled.*

All concurred.