831 P.2d 882

**AMICA MUTUAL INSURANCE COMPANY, a corporation, Plaintiff–Appellee,**

v.

**AUTO DRIVEAWAY COMPANY, a Delaware corporation, Defendant–Appellant.**

**No. 1 CA–CV 90–668.**

Court of Appeals of Arizona, Division 1, Department E.

May 28, 1992.

Ridenour, Swenson, Cleere & Evans by Eric B. Gonzalez, Phoenix, for plaintiff-appellee.

Ted A. Smith, Ltd. by Ted A. Smith, Phoenix, for defendant-appellant.

## OPINION

EUBANK, Judge.

This case involves a conflict between an automobile insurer (Amica) and a common carrier (Auto Driveaway) as to which one should bear the ultimate loss for an automobile that was damaged while being transported across the country. From a summary judgment ruling for the automobile insurer, the carrier appeals. We affirm the trial court's ruling.

## FACTS AND PROCEDURAL HISTORY

Since the parties filed an agreed statement of facts in lieu of a transcript, the relevant facts in this case are undisputed. *See* Rule 11(d), Ariz.R.Civ.App.P. On September 1, 1989, Defendant–Appellant Auto Driveaway Company (Driveaway) entered into a written agreement to transport Ann Montgomery's Toyota Four Runner from Boston, Massachusetts to Sedona, Arizona. The agreement recited that Driveaway carries $500,000/1,000,000 public liability and $500,000 property damage insurance, but it also contained a "benefit of insurance" clause, which provided:

> Should Carrier be liable on account of loss or damage, it shall have the full benefit of any insurance that may have been effected upon or on account of said property, so far as this shall not void the policies or contracts of insurance, provided that Driveaway reimburses the claimant for the premium paid thereon applicable to the time during which the vehicle is in Carrier's care, custody and control.

Driveaway contracted with three individuals, Susan Clapperton, James Desmond Blain, and Michael Johnson, to drive the vehicle to Sedona. On September 8, 1989, while driving through Iowa, Michael Johnson lost control of the Toyota Four Runner causing it to roll over.

Montgomery carried automobile insurance on her vehicle with Plaintiff–Appellee Amica Mutual Insurance Company (Amica). Under the terms of the policy, Amica paid its insured, Montgomery, the sum of $8,018.73 for the damage to the vehicle.

Although the collision coverage portion of the Amica policy provided for payment to the insured for damage to the vehicle, it also provided that "[t]his insurance shall not directly or indirectly benefit any carrier or other bailee for hire." Moreover, the policy specified:

> If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right.

Amica sued Driveaway, alleging that because Driveaway is a carrier, liable for

damage to goods it transports pursuant to 49 U.S.C.A. § 11707 (West Supp.1991) and because Amica was subrogated to the rights of its insured, it was entitled to reimbursement of the money it paid to its insured for the damages to the vehicle. After considering cross-motions for summary judgment, the trial court granted judgment in favor of Amica.

## ISSUES FOR REVIEW

Three issues are raised in this appeal:

(1) How should the conflicting provisions in the automobile insurance policy and the transport agreement with the common carrier be resolved?

(2) Was the driver of the vehicle an insured under the automobile policy collision coverage, so as to preclude the insurer's assertion of subrogation rights against him and Driveaway, who procured his services, for any damage he caused to the automobile?

(3) Would the outcome be different if it is determined that the driver of the vehicle was an independent contractor rather than Driveaway's employee?

## DISCUSSION

■ Driveaway acknowledges that it is a carrier within the provisions of 49 U.S.C.A. § 11707 which imposes statutory liability on a carrier for damages to goods it agrees to transport. Nevertheless, Driveaway argues that it is Amica, the insurer of the vehicle, who should bear the loss in this instance.

Arizona has not yet addressed how to resolve the legal conflict created when a carrier in its shipping agreement or bill of lading provides that it should be entitled to the benefit of any insurance on the goods, but the insurer of the goods provides in its policy that coverage shall not inure to the benefit of the carrier and that the insurer shall be subrogated to the shipper's right *to hold the carrier liable for* damage to the goods. In jurisdictions in which this issue has been litigated, we find the issue repeatedly resolved in favor of the insurer.

In *United States v. Auto Driveaway Co.*, 464 F.2d 1380 (7th Cir.1972), the Court of Appeals for the 7th Circuit considered whether a carrier's use of a clause giving it the benefit of the shipper's insurance so long as it would not void the policy was an improper attempt by the carrier to limit the liability imposed upon it under 49 U.S.C. § 20(11) and § 316(d), the predecessors of 49 U.S.C.A. § 11707. The court found no violation of the statute as long as the carrier did not "require" its customers to obtain insurance for its benefit and as long as the carrier reimbursed the customer for the premium if the company actually benefitted from the insurance policy. *Id.* at 1383. Even though it found the "benefit of insurance" clause to be valid, it recognized that, practically speaking, the clause would have little effect, because "the insurer is, or can be, protected by a policy endorsement which would [effectively] conflict with the clause." *Id.*

In the frequently-relied-upon case of *Hartford Fire Ins. Co. v. Payne*, 199 Iowa 1008, 203 N.W. 4 (1925), the Iowa Supreme Court discussed the habitual conflict in this area between carriers and insurers. From its research, the court concluded that, generally speaking, the carrier may not relieve itself from liability to the shipper and may not require the shipper to take out insurance for its benefit because that would be requiring the shipper to indemnify the carrier from liability for its own negligence. *Id.* at 1011, 203 N.W. at 5. However, the carrier has an insurable interest and, therefore, may enter into a contract with the shipper to benefit from any insurance that the shipper may choose to carry. *Id.* Because the insurer's obligation is purely contractual, though, the insurer has the right to impose such limitations and restrictions upon its liability as may be agreed upon in the insurance contract and can make a contract that is worthless to the carrier. *Id.* at 1012, 203 N.W. at 6. The court stated:

When [the insurer] contracts, therefore, that its undertaking of insurance shall be void if the insurer does anything that operates to deprive it of the right, upon paying the loss, to be subrogated to the

rights of the shipper and to recover against one whose act or omission caused the loss, a contract between the shipper and carrier that gives the latter the benefit of the insurance voids the contract of insurance for the shipper, and is ineffectual to secure the benefit of insurance to the carrier. That is to say, the carrier can have no benefit of insurance when there is no valid insurance, and there is no valid insurance when the assured has done a thing which he has expressly stipulated would invalidate it.

*Id.*

Numerous courts have followed the same logic, resolving the crunch between the conflicting provisions in the insurance policy and in the transport agreement in favor of the insurer. *See e.g., Mohl v. NTC of America, Inc.,* 564 F.Supp. 401 (D.Colo. 1982); *Travelers Indem. Co. v. Auto Driveaway Co.,* 278 N.W.2d 262 (Wis.App. 1979); *Richard D. Brew & Co. v. Auclair Transp., Inc.,* 106 N.H. 370, 211 A.2d 897 (1965); *Mode O'Day Corp. v. Ringsby Truck Lines, Inc.,* 100 Cal.App.2d 748, 224 P.2d 368 (1950); *see also* E.T. Tsal, annotation, *Validity, Construction and Effect of Provision in Shipping Contract or Bill of Lading that Carrier Shall Have the Benefit of Shipper's Insurance Against Loss of or Damage to Shipment,* 27 A.L.R.3d 984 (1969).

Driveaway cites one case, *Grahame v. Mitchell,* 28 Ill.App.3d 334, 329 N.E.2d 17 (1975), in which a court placed the loss upon an insurer of a vehicle instead of upon the insurer of the company which was engaged in the business of transporting automobiles. In that case, however, the only issue was whether the "automobile business exclusion" provision in the family automobile insurance policy was applicable, and the court found that it was not. *Id.* The case did not discuss whether the automobile insurer could nullify a "benefit of insurance" provision in a shipping agreement with provisions in the insurance policy, giving the insurer the right of subrogation and providing that the collision coverage was not to inure to the benefit of a carrier or bailee for hire. *See Id.* Driveaway has given us insufficient reason for rejecting the reasoning of the majority of courts on this issue.

■ Secondly, Driveaway argues that the driver who caused the damage to the vehicle was a permissive user of the vehicle, and, therefore, he was "insured" under the insurance policy. It points out that the liability section of the policy defines "insured" to include a person using the covered vehicle with a reasonable belief that the person is entitled to do so. It argues that Amica cannot have any subrogation rights against one of its own insureds; hence, Amica cannot have any subrogation rights against Driveaway, which did nothing more than procure a driver who was an "insured" under the terms of the policy. Driveaway cites *Western States Mut. Ins. Co. v. Standard Mut. Ins. Co.,* 26 Ill.App.2d 378, 167 N.E.2d 833 (1960), for the proposition that an insurance company does not have a right of action against a person to whom the named insured entrusts his automobile, even if the person is at fault, where such person is intended to be covered as an additional insured.

In a case with facts virtually identical to those in this case, Division Two of this court rejected the argument that a driver hired to transport a vehicle was an "insured" under the collision coverage benefits of the automobile insurance policy on the vehicle. In *Auto Driveaway Co. v. Aetna Casualty & Surety Co.,* 19 Ariz. App. 224, 506 P.2d 264 (1973), this same defendant, Driveaway, had contracted to transport a vehicle across the country and had procured a driver who damaged the vehicle while transporting it. *Id.* at 226, 506 P.2d at 266. Although the driver was an "insured" under the liability section of the policy, the court found that he was not an "insured" for purposes of collision coverage where the policy specified that "a bailee for hire is specifically excluded." *Id.* at 227, 506 P.2d at 267. Driveaway relied on the same *Western States* case that it has cited to us in the present case. *Id.* Division Two found the case to be inapplicable because of a marked difference be-

tween the policy construed in *Western States* and Aetna's policy. *Id.* The court noted that, in *Western States*, the persons insured appeared to be the same under both its liability coverage and its collision coverage, whereas, in the Aetna policy, the liability coverage and the collision coverage had separate provisions as to the persons insured. *Id.* Further, under the collision coverage of Aetna's policy, bailees for hire were specifically excluded as "persons insured." *Id.* The court concluded, therefore, that the driver was not an "insured" under the collision coverage and, therefore, that Aetna had the right of subrogation for the damage done by the driver. *Id.*

Similarly, in this case, although the driver is an "insured" under the liability coverage, he is excluded from the collision coverage portion of the policy. That portion of the policy expressly provides that the collision coverage "shall not directly or indirectly benefit any carrier or other bailee for hire." In addition, under this policy, we find that Amica has the right of subrogation where the damage to the vehicle is attributable to the carrier or bailee for hire.

■ As a final point, Driveaway argues that it is unclear in the *Auto Driveaway v. Aetna* case that the driver was an independent contractor. Without explanation or authority, Driveaway suggests that the case would have had a different result if the driver had been an independent contractor. Driveaway argues that Michael Johnson, who was driving the vehicle in this case when it was damaged, was an independent contractor rather than Driveaway's employee.

Assuming that Michael Johnson was an independent contractor, we do not find that this fact would change the outcome in this case. Driveaway executed an agreement obligating it to transport the Montgomery vehicle. It makes no difference in terms of its liability to Montgomery or her insurer who Driveaway procured to do the actual transporting of the vehicle and what the legal relationship of that person was to it.

Driveaway also argues that all it did was to bring the vehicle owner and the driver together. It argues that this situation is similar to a newspaper allowing a vehicle owner to place an advertisement for a driver to transport the vehicle. Further, Driveaway contends that, because the newspaper would not be liable for bringing the vehicle owner and the driver together, it should not be liable either.

This argument has no merit. It is clear from the wording of the transport agreement that Driveaway assumed much more responsibility to the vehicle owner than would a newspaper in which she might have advertised for a driver. Driveaway agreed to transport this vehicle whether or not its business practice is to do the transporting itself or to locate someone else to do it.

Appellee Amica requests attorneys' fees on appeal pursuant to A.R.S. § 12–341.-01(A). We grant attorneys' fees in an amount to be determined after appellee's compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

The judgment in favor of Amica is affirmed.

VOSS and KLEINSCHMIDT, JJ., concur.