[No. 35229.   Department Two.   March 10, 1960.]

Mac McCree *et al., Respondents,* v. Dan Jenning *et al., Defendants,* Hardware Mutual Casualty Company, *Appellant.*[1]

*Miracle, Treadwell & Pruzan,* for appellant.

*John L. Vogel,* for respondents.

Rosellini, J.—This is an appeal from a judgment granted in favor of respondents (plaintiffs) against the appellant as garnishee defendant, pursuant to trial upon a controverted answer to a writ of garnishment.

The plaintiffs had previously recovered judgment for damages resulting from the negligent maintenance and

[1]Reported in 349 P. (2d) 1071.

operation of an automobile. The defendants against whom judgment was recovered were Dan Jenning and wife, the owners of the vehicle; Richard Miller, who had possession of the vehicle for the purpose of making repairs; and Frank Farrell, who was driving it at the time of the accident.

At the time of the occurrence, Frank Farrell was an "insured" under the terms of a policy issued to his mother, Ella K. Farrell, by the appellant. He was at that time employed at McDougall's department store.

Richard Miller, whose primary occupation was that of barber, was also engaged in the business of repairing automobiles in his spare time at his home. Prior to the date of the accident, Miller took the Jenning automobile into his possession, agreeing to install a master cylinder, for which he was paid twenty dollars in advance. When the installation was completed, Jenning called Miller and asked him to bring the automobile down to the barbershop the following day, where he would pick it up. Miller agreed to do this, but said that it needed gas. Farrell, who was at the Miller home as a guest, either volunteered or was asked to take the vehicle to a gas station for this purpose. It was on this trip that the accident occurred.

The appellant resisted the writ of garnishment on the ground that Farrell's liability was expressly excluded under the terms of the policy because the automobile was being "used in the automobile business" at the time. The provisions relied upon read:

"Definitions. Under Part I:

" . . .

" 'automobile business' means the business of selling, repairing, servicing, storing or parking of automobiles;

" . . .

"Exclusions. This policy does not apply under Part I:

" . . .

"(f) to a non-owned automobile while used (1) in the automobile business by the insured or (2) in any other business or occupation of the insured except a private passenger automobile operated or occupied by the named insured or by his private chauffeur or domestic servant, or a trailer used therewith;"

The trial court construed these provisions to mean that coverage was excluded only where the non-owned automobile was being used in an automobile business in which the insured was employed or engaged. The appellant contends that the plain language of the provisions will not support such a construction. We may agree with the appellant in this respect, and yet uphold the trial court's disposition of the case, for we think it clear that for another reason, the exclusion does not apply.

The appellant appears to have overlooked the significance of the word "used," and to have assumed that any automobile in the possession or under the control of an automobile repairman would necessarily come within the exclusion. We do not so read the exclusion.

According to the pertinent definitions in Webster's New Twentieth Century Dictionary (2d ed. 1957), the verb "to use" means "to put or bring into action or service; to employ for or apply to a given purpose." Synonyms are "employ, exercise, treat, practice, accustom, habituate, inure."

█ It would appear evident, therefore, that an automobile "used in the automobile business," would be one which was employed for some purpose in connection with that business. For example, a tow truck, an automobile used for demonstration purposes, or a vehicle used for securing or deliverying equipment and supplies would be "used in the business." But the Jenning automobile was not turned over to Miller to be used by him for his business purposes. It was simply brought to him to be repaired.

In driving the Jenning automobile to the gas station, Farrell was not using it in the repair business, but was merely accommodating a friend, who in turn was accommodating a customer.

██ If there were any ambiguity in this language of the policy, we would be required to construe it in favor of the insured. *Anderson & Middleton Lbr. Co. v. Lumbermen's Mut. Cas. Co.*, 53 Wn. (2d) 404, 333 P. (2d) 938. Under this rule of construction, the court should refrain from enlarging the common meaning of a word used in an insurance policy, where such an interpretation would result in

denying coverage to an insured. We conclude, therefore, that the language of the policy in question is not broad enough to exclude the liability of the insured under the circumstances involved in this case.

The judgment is affirmed.

WEAVER, C. J., HILL, FINLEY, and FOSTER, JJ., concur.