**Frank H. GOFORTH, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant and Third-Party Plaintiff,**

v.

**Robert Lee MELTON, Manson L. Huntley, State Farm Mutual Insurance Company and Nationwide Insurance Company, Third-Party Defendants.**

**Civ. A. No. 2103.**

United States District Court
W. D. North Carolina,
Asheville Division.

Heard Aug. 6, 1963.

Decided Aug. 21, 1963.

See also 213 F.Supp. 595.

Harold K. Bennett, Ward & Bennett, Asheville, N. C., for plaintiff.

Harry DuMont, Uzzell & DuMont, Asheville, N. C., for defendant and third-party plaintiff.

O. E. Starnes, Jr., Van Winkle, Walton, Buck & Wall, Asheville, N. C., for third-party defendant State Farm Mutual Ins. Company.

J. Scroop Styles, Asheville, N. C., for third-party defendants Robert Lee Melton and Mason L. Huntley.

William C. Morris, Jr., Williams, Williams & Morris, Asheville, N. C., for third-party defendant Nationwide Ins. Co.

CRAVEN, Chief Judge.

This is an action on a judgment for damages rendered in the state trial court against Robert L. Melton. Goforth here contends that Melton was an insured driver under a policy of automobile liability insurance issued by Allstate to Ernest R. Bartlett and that Allstate is liable, therefore, for the amount of the judgment.

At the conclusion of all of the evidence, in open court, the undersigned district judge dictated tentative findings of fact, which findings are now affirmed, except as they may be modified in this memorandum opinion.

The trial proceeded on the theory that the language of permissive user in the insurance policy issued by Allstate Insurance Company to Bartlett was that contained in paragraph 5 of the complaint, and that the exclusion clause was as set out in defendant Allstate's brief. Neither at pre-trial nor during the trial did counsel for defendant Allstate ever formally admit the allegation of paragraph 5, and it was indicated at the trial that the original policy had been misplaced by the assured Bartlett. The court, on its own motion, suggested that the original policy be located and made a part of the record evidence, or failing that, that the defendant Allstate furnish to the court a blank policy containing the language of the policy issued to Bartlett. Counsel indicated their consent to this procedure, and this opinion and the decision of the court is predicated upon the assumption that the actual language in the Bartlett policy is identical with that appearing in the complaint and in the briefs of counsel for Goforth and Allstate Insurance Company. In the event of a discrepancy, the court retains jurisdiction to re-open the case for the purpose of receiving further evidence to establish the precise language of the policy involved.

On the assumption that the language contained in the policy is that brought to the court's attention and argued during the trial, it would ap-

pear that the verbiage with respect to permissive user is as follows:

"The following are insureds * *:

(a) With respect to the owned automobile,

(1) the named insured * * *.

(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured."

Beyond question, Bartlett expressly granted permission to Melton to drive his automobile back to the Melton-Huntley garage for the purpose of doing further repair work upon the automobile. The actual use of his automobile by Melton was with the express permission of the named insured Bartlett. It is true that the court might permissibly infer from Bartlett's better acquaintance with Huntley that he would have preferred Huntley to drive his car rather than Melton. Such an inference is refuted by the fact that Bartlett did not express a preference and handed the keys to Melton. The evidence does not disclose Bartlett's car to have had unusual value: it was a 1950 Hudson. The most that can be said for the defendant's contention is that Bartlett may well have intended to grant express permission to *both* Melton and Huntley to use his automobile for the purpose intended. The fact remains that Melton did use it and had express permission to do so.

Under the pertinent omnibus portion of the policy quoted hereinabove, the court concludes as a matter of law that the facts establish Melton to have been an additional insured by reason of using the automobile with the express permission of the named insured.

But defendant earnestly contends that Melton came within one of the exclusions of the policy, relying upon the following language:

"*Exclusions*. This policy does not apply * * *

(g) to an owned automobile while used in the automobile business, but this exclusion does not apply

to the named insured, a resident of the same household as the named insured, a partnership in which the named insured or such resident is a partner, or any partner, agent or employee of the named insured, such resident or partnership;"

* * * * * *

" 'automobile business' means the business or occupation of selling, repairing, servicing, storing or parking automobiles;".

Herein is the heart of the controversy. Counsel for defendant Allstate contend with some ingenuity that plaintiff must choose between the horns of a dilemma: that if the automobile was "used" within the meaning of the permissive user clause of the policy it must have been used "in the automobile business" which excludes coverage. This is an over-simplification and ignores the definition contained in the policy of "automobile business". That business could, of course, include the transporting of motor vehicles to and from a garage for the purpose of repairing. No such meaning, i. e., "transporting" is found within the definition, and it would have been easy to supply. The policy was written by Allstate and not by the additional insured Melton. Wherever ambiguous, it should be read against its scrivener. Pepsi-Cola Bottling Co. of Charleston and Travelers Insurance Co. v. Indemnity Insurance Co. of North America, 318 F.2d 714 (4th Cir. 1963). This rudimentary rule of construction applies not only in favor of the policyholder but also in favor of the additional insured. Ibid. The omission to include the *transporting* of automobiles along with selling, repairing, servicing, storing or parking them is significant, and implies an intent not to enlarge the exclusion.

Counsel agreed during oral argument that some years ago the usual omnibus clause in liability insurance policies included the following:

"Nor shall insurance under this insuring agreement be available to any such garage * * * nor to the

proprietors, employees, or agents thereof."

Such language would plainly and unequivocally exclude Melton on the facts in this case, and the omission of such language and substitution of that in Bartlett's policy is a plain indication of intention on the part of Allstate to broaden coverage. No evidence was offered at the trial of any special meaning in the trade attached to the word "repairing". In the absence of such evidence, and the burden of proof is apparently upon defendant Allstate to establish the exclusion [1], the court is unable to construe the phrase "repairing * * * automobiles" to include Melton's activity in driving Bartlett's car to his shop. It follows that Bartlett's automobile was *not* being "used in the automobile business" at the time of the collision.

Neither the North Carolina Supreme Court nor the Court of Appeals for the Fourth Circuit has had occasion to consider a case factually similar to the one here, i. e., whether coverage is afforded to a garage mechanic taking the owner's vehicle to the garage for the purpose of making repairs on it.

In Chatfield v. Farm Bureau Mutual Automobile Insurance Co., 208 F.2d 250 (4th Cir. 1953), Judge Dobie noted that the cases in this field are legion * * * but that each case stands more or less on its peculiar facts. He then said:

"Our own decisions, we think, show a strong tendency toward a liberal interpretation, in favor of the insured, of the 'omnibus clause.' This clause should not be construed and applied, from a purely analytical viewpoint, under a literal interpretation of the words of the policy. The spirit, not the letter, should control. Statutes requiring the insertion of the 'omnibus clause' in automobile liability policies reflect a clear cut policy to protect the public. They should be construed and applied so as to carry out this policy."

Plaintiff cites several cases which appear to be factually similar to the case at bar. All four tend to support coverage on the facts in this case: McCree v. Jenning, 55 Wash.2d 725, 349 P.2d 1071; Commercial Standard Insurance Co. v. Sanders, Tex.Civ.App., 326 S.W. 2d 298; Le Felt v. Nasarow, 71 N.J. Super. 538, 177 A.2d 315. And see: 7 Am.Jur.2d "Automobile Insurance" Section 32. In Chavers v. St. Paul Fire & Marine Insurance Co., D.C., 188 F. Supp. 39 (1960), Judge Connell emphasized that it is the business the *car* was being used in, not the business of the person using the car, that is the important consideration. It is beyond argument that Melton's occupation was that of a garageman in the automobile repair business, but that is not to say that the automobile itself was being used in such business at the time of the collision. If it was being used in anybody's business, it would seem just as sensible to say that it was being used in Bartlett's business of taking care of his own property and getting it repaired. Melton's business would not begin until the journey was completed. The dominant importance of the *facts* [2] is demonstrated by supposing that the exception of the named insured himself from the exclusionary clause had been omitted. If Bartlett himself, the owner of the automobile, had been driving it on the way to Melton's garage to be repaired, would the defendant seriously contend that the automobile was then being used in the automobile business? Yet, there is nothing in the language of exclusion to distinguish such a fact situation from the one at bar. But for the exception, the language meets Bartlett's going to the garage just as well as it meets Melton's doing so.

Indefatigible counsel for defendant have cited to the court numerous cases

---

1. 29 Am.Jur. "Insurance" Section 1854.

2. See: the first paragraph of Mr. Justice Ervin's opinion in Hooper v. Maryland Casualty Co., 233 N.C. 154, 63 S.E.2d 128 (1951).

entirely pertinent with respect to the law but factually distant. For example, Lee v. Aetna Casualty & Surety Co., 178 F.2d 750 (2d Cir. 1949), is a case involving the "use" of an elevator in which Judge Hand said that "[o]ne uses 'a thing' when one 'makes use' of it * * *". Undoubtedly, Bartlett's automobile was at the time of the collision being "used". The question is whether it was then being used "in the automobile business". The court concludes that it was not.

■■ Defendant Allstate joined Melton as a party-defendant conditionally alleging that, in any event, Melton's (and Huntley's) liability was primary and the defendant Allstate's secondary, and praying that defendant Allstate be indemnified by Melton for any sums Allstate might have to pay to plaintiff Goforth. Allstate cites no authority in support of this proposition. None is found by the court. See: 7 Am.Jur.2d "Automobile Insurance" Section 204 et seq. Melton, it has been found by the court, was an additional insured under Allstate's policy. Ordinarily, in the absence of special contract, the insurer has no right of indemnity against the insured.

> Where it is the duty of an automobile liability insurer to defend an action against the insured, and the insurer erroneously or wrongfully refuses to do so on the ground that the claim upon which the action against the insured is based is not within the coverage of the policy, the insurer is guilty of a breach of contract which renders it liable to the insured for all damages resulting to him as a result of such breach. The fact that the refusal of the insurer to defend an action against the insured based on a claim actually within the coverage of the policy results from the insurer's erroneous assumption that such claim is outside the policy coverage, although based on an honest mistake of the insurer, constitutes nevertheless an unjustified refusal rendering the insurer liable for breach of its contract.

> The specific consequences of such an unjustified refusal to defend are: * * * (1) liability for the amount of the judgment rendered against the insured or of the settlement made by him; (2) liability for the expenses incurred by the insured in defending the suit; (3) liability for any additional damage traceable to its refusal to defend. 7 Am.Jur. 2d "Automobile Insurance" Sections 166 and 167.

Is Defendant Allstate liable in *this* action to *Melton* for the sum of $300.00 attorney fees reasonably incurred by Melton to defend himself from Allstate's cross-action?

■ Although Allstate's cross-action seems wholly devoid of legal basis, ordinarily the resolution of such matters would come in another action by Melton against Allstate in the nature of malicious abuse of process. But it seems inequitable to remand Melton to another court and another lawsuit with different and difficult elements of proof when it clearly appears that this additional expense is directly traceable to Allstate's unjustified refusal to defend him in the first instance.

Beyond question Allstate owes Melton the $500.00 expense he incurred in defending Goforth's lawsuit in the state superior court—such expense being directly attributable to Allstate's unjustified refusal to defend him. The same unjustified refusal is the direct and proximate cause of Melton's expense in this lawsuit since Melton was not a necessary party to the litigation of the coverage controversy. See: 7 Am.Jur.2d "Automobile Insurance" Section 217.

Counsel may tender the court an appropriate judgment to require Allstate to pay $800.00 attorney's fees incurred by Melton, and to require Allstate to pay Goforth the amount due under the judgment of the superior court in Goforth v. Melton.