JOSEPH HAMMER v. MALKERSON MOTORS,
INC., AND ANOTHER.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY,
THIRD-PARTY DEFENDANT.

132 N. W. (2d) 174.

December 18, 1964—No. 39,458.

*Brenner & Harroun,* for appellants.
*Meagher, Geer, Markham & Anderson, Mary Jeanne Coyne,* and
*O. C. Adamson II,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a judgment of the Hennepin County District Court entered pursuant to an order granting summary judgment in favor of third-party defendant, St. Paul Fire and Marine Insurance Company.

The facts are not in dispute. On October 19, 1960, Elsa P. Cooper brought her 1960 Oldsmobile automobile to Malkerson Motors, Inc.,

for servicing and repair. The automobile was parked in a lot outside the garage. While Robert J. Engman, a Malkerson employee, was driving the automobile into the garage to have it repaired, he struck and injured Joseph Hammer. Hammer commenced this action against Engman and Malkerson Motors, Inc., to recover damages for personal injuries.

Mrs. Cooper was insured under an automobile liability policy issued by St. Paul Fire and Marine Insurance Company. Asserting that they were omnibus insured under this policy of insurance, Malkerson Motors, Inc., brought third-party proceedings against St. Paul Fire and Marine Insurance Company. It denied liability under the provisions of the policy and moved for summary judgment on the basis of the pleadings, the provisions of the policy, and the provisions of a comprehensive liability policy carried by Malkerson with Universal Underwriters Insurance Company. The facts were stipulated. It was agreed that Malkerson is "in the business of repairing and servicing automobiles"; that Mrs. Cooper brought her automobile to Malkerson for repair and servicing; and that at the time Engman was driving the Cooper automobile into the service department he was within the course and scope of his employment by Malkerson Motors, Inc.

The pertinent provisions of the policy carried by Mrs. Cooper are that the insurer agrees as follows:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"A. bodily injury, sickness or disease, including. death resulting therefrom, hereinafter called 'bodily injury' sustained by any person;

\* \* \* \* \*

arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, \* \* \*.

\* \* \* \* \*

"PERSONS INSURED

"The following are insureds under Part I:

"(a) With respect to the owned automobile,

"(1) the named insured and any resident of the same household,

"(2)   any other person using such automobile, provided the actual use thereof is with the permission of the named insured;

\*     \*     \*     \*     \*

"(c)   Any other person or organization legally responsible for the use of

"(1)   an owned automobile, or

"(2)   a non-owned automobile, \* \* \* provided the actual use thereof is by a person who is an insured under (a) or (b) above with respect to such owned automobile or non-owned automobile.

\*     \*     \*     \*     \*

"DEFINITIONS

"Under Part I:

" 'named insured' means the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household;

" 'insured' means a person or organization described under 'Persons Insured';

\*     \*     \*     \*     \*

" 'owned automobile' means a private passenger, farm or utility automobile or trailer owned by the named insured, and includes a temporary substitute automobile;

\*     \*     \*     \*     \*

" 'automobile business' means the business or occupation of selling, repairing, servicing, storing or parking automobiles;

" 'use' of an automobile includes the loading and unloading thereof;

\*     \*     \*     \*     \*

"EXCLUSIONS

"This policy does not apply under Part I:

\*     \*     \*     \*     \*

"(g)   to an owned automobile *while used in the automobile business,* but this exclusion does not apply to the named insured, a resident of the same household as the named insured, a partnership in which the named insured or such resident is a partner, or any partner, agent

or employee of the named insured, such resident or partnership." (Italics supplied.)

Under these provisions of the policy, it is obvious that Malkerson is an insured unless it is excluded by clause (g). The determination of this question rests on the interpretation of the clause "used in the automobile business." Essentially, it is the contention of third-party defendant that, while moving the automobile from the parking lot to the garage, Malkerson was using the automobile in the automobile business.

Interpretation of this clause is an open question in Minnesota. The exclusionary clause involved is a comparatively new one in automobile insurance. In Wendt v. Wallace, 185 Minn. 189, 190, 240 N. W. 470, 471, we had occasion to construe a clause which was formerly quite common. It read:

"This agreement shall exclude any obligation of the Company * * * to any person or organization, other than the name[d] Assured, operating an automobile repair shop, public garage, sales agency or service station, and arising out of the operation thereof."[1]

Some of the courts that have considered the two types of exclusionary clauses have noted that there is a difference. Thus, in LeFelt v. Nasarow, 71 N. J. Super. 538, 549, 177 A. (2d) 315, 322, affirmed, 76 N. J. Super. 576, 185 A. (2d) 217, the court said:

"Unlike the clause in Berry [Berry v. Travelers Ins. Co. 118 N. J. L. 571, 194 A. 72], the exclusionary clauses in the liability insurance part of defendants' policies do not purport to exclude an 'insured' from coverage because of his business or occupation. The exclusion relates to the use to which the automobile is being put, not to the identity or occupation of the person driving it."

In Chavers v. St. Paul Fire & Marine Ins. Co. (N. D. Ohio) 188 F. Supp. 39, 42, the court said:

"* * * Thus, the business the *car* was being used in, not the business or occupation of the person using the car, be he a claimant under the policy or not, is the important consideration."

---

[1] See, also, Barry v. Sill, 191 Minn. 71, 253 N. W. 14.

In Goforth v. Allstate Ins. Co. (W. D. N. C.) 220 F. Supp. 616, 619, the court said:

"* * * It is beyond argument that Melton's occupation was that of a garageman in the automobile repair business, but that is not to say that the automobile itself was being used in such business at the time of the collision."

In Commercial Standard Ins. Co. v. Sanders (Tex. Civ. App.) 326 S. W. (2d) 298, 300, the court said:

"The exclusion in question is relatively new, and has not been considered in any reported case as far as we can ascertain. Previously, the standard basic automobile policy contained a similar limitation on additional insureds under the omnibus clause for accidents 'arising out of the operation of an automobile sales agency.' This was to prevent concurrent or overlapping coverage with the garage liability policy specifically designed for such risks."

In 393 Ins. L. J. 647, 648, in an article by John P. Faude entitled *The New Standard Automobile Policy: Coverage (Insuring Agreements and Exclusions)*, we find the following:

"The policy in the past has contained an exclusion as to any additional ('omnibus') insured for an accident arising out of the operation of an automobile sales agency or repair shop. (This exclusion is present in order to avoid concurrent or overlapping coverage with the special garage liability policy which is specially designed for such risks.)"

7 Appleman, Insurance Law and Practice, § 4372, discusses the older type of exclusion. In the 1964 Pocket Part, by Professor Ross C. Tisdale, § 4372, the newer type of exclusion is recognized. We there find the following:

"A clause excluding automobiles used in the * * * automobile business, is to be distinguished from clauses discussed heretofore. An automobile brought in to be parked or to be repaired is not being used in the parking or automobile business."

See, also, Annotations, 47 A. L. R. (2d) 556, as to the older type of exclusion, and 71 A. L. R. (2d) 964, as to the newer type.

Clauses identical or similar to the one involved here have been construed in a few other jurisdictions. Some of these decisions are helpful and some are reconcilable. In McCree v. Jenning, 55 Wash. (2d) 725, 349 P. (2d) 1071, an accident occurred while an agent of a repairman was returning the car to the owner after it had been repaired. In holding that an exclusionary clause identical to that before us was inapplicable, the court said (55 Wash. [2d] 727, 349 P. [2d] 1072):

"It would appear evident, therefore, that an automobile 'used in the automobile business,' would be one which was employed for some purpose in connection with that business. For example, a tow truck, an automobile used for demonstration purposes, or a vehicle used for securing or delivering equipment and supplies would be 'used in the business.' But the Jenning automobile was not turned over to Miller to be used by him for his business purposes. It was simply brought to him to be repaired."

In LeFelt v. Nasarow, *supra,* an accident occurred while the automobile was driven on a test run after having been repaired. In holding that it was not used in the automobile business while being so driven, the court, following McCree v. Jenning, *supra,* said (71 N. J. Super. 555, 177 A. [2d] 325):

"* * * [A] customer's automobile in the custody or possession of an automobile repairman who drives it for the purpose of testing the repairs which he has made is not being used in the automobile business within the meaning of the exclusion clauses in defendants' policies."

Goforth v. Allstate Ins. Co. (W. D. N. C.) 220 F. Supp. 616, involved an exclusionary clause identical to that before us. An accident occurred while the automobile was being driven to the garage for repairs by an employee or co-owner of the garage. In holding that the exclusionary clause did not absolve the insurer of liability, the court said (220 F. Supp. 618):

"* * * Counsel for defendant Allstate contend with some ingenuity that plaintiff must choose between the horns of a dilemma: that if the

automobile was 'used' within the meaning of the permissive user clause of the policy it must have been used 'in the automobile business' which excludes coverage. This is an over-simplification and ignores the definition contained in the policy of 'automobile business'. That business could, of course, include the transporting of motor vehicles to and from a garage for the purpose of repairing. No such meaning, i.e., 'transporting' is found within the definition, and it would have been easy to supply. The policy was written by Allstate and not by the additional insured Melton. Wherever ambiguous, it should be read against its scrivener."

Standing alone, this language would seem to support appellants' position. The court cites with apparent approval McCree v. Jenning, *supra,* and LeFelt v. Nasarow, *supra.* However, the court, by way of dicta, stated (220 F. Supp. 619): "Melton's business would not begin until the journey was completed." That statement may conceivably leave the implication that if the automobile had reached Melton's place of business and had thereafter been moved it would have been used in the automobile business. However, the statement is pure dicta, and we have no way of knowing what the court would have held if that question had been before it. On appeal to the United States Court of Appeals (4 Cir.) 327 F. (2d) 637, the decision was affirmed, but the court in so doing only said:

"* * * [A] private automobile being driven from the place of business of the owner by a garage keeper to his garage for the purpose of effecting repairs requested by the owner was not being 'used in the automobile business' within the meaning of an exclusion clause in the owner's liability insurance policy."

In Walker v. State Farm Mutual Auto. Ins. Co. 40 Ill. App. (2d) 463, 190 N. E. (2d) 121, the court, in construing a clause such as we have here, apparently assumed that it had the same meaning as the older clause, such as we find in Wendt v. Wallace, 185 Minn. 189, 240 N. W. 470. In the Walker case, while a son of the named insured drove to lunch he picked up some auto parts for a filling station. A collision occurred on his way back to the station. The court held that

there was no dispute but that the filling station was engaged in the automobile business. The court referred to an annotation in 47 A. L. R. (2d) 556, which deals with an exclusionary clause similar to the one in the Wendt case; that is, the older type. The court apparently relied on Canadian Ind. Co. v. Western Nat. Ins. Co. 134 Cal. App. (2d) 512, 286 P. (2d) 532, which also involved the old type of exclusion, not the one now before us. The court either overlooked or ignored Allstate Ins. Co. v. Skawinski, 40 Ill. App. (2d) 136, 189 N. E. (2d) 365, decided only two months previous to the Walker case by another division of the Illinois appellate court. That case involved the same type of exclusionary clause as we have before us and as was involved in the Walker case. In holding that a car involved in an accident which occurred while the automobile was being repaired—as it moved forward when the motor was accelerated—was not being used in the automobile business, the court said (40 Ill. App. [2d] 140, 189 N. E. [2d] 367):

"* * * If the accident had occurred while Skawinski was employing the automobile to obtain parts, or for delivery purposes or as a 'courtesy car' for the benefit of his customers, then he would indeed have been using this nonowned automobile in his business. However, this automobile was not being utilized or employed as an incident of his service or as a means, tool or adjunct for or on behalf of his auto repair business. This automobile, while being repaired, was the object of the defendant's business and not an incident or a tool being used therein."

Other cases construing similar clauses have found the exclusion does not apply for other reasons. For instance, in Commercial Standard Ins. Co. v. Sanders (Tex. Civ. App.) 326 S. W. (2d) 298, the court found that a salesman was driving the car on his own personal business. Similarly, in Chavers v. St. Paul Fire & Marine Ins. Co. (N. D. Ohio) 188 F. Supp. 39, the court found that a parking lot used in connection with a restaurant was not an automobile business. In Cherot v. United States F. & G. Co. (10 Cir.) 264 F. (2d) 767, 71 A. L. R. (2d) 959, the court found that the driver of the automobile was not in the automobile business but was engaged in repairing cars only as a hobby.

See, also, National Farmers Union Property & Cas. Co. v. Farmers Ins. Group, 14 Utah (2d) 89, 377 P. (2d) 786; Provident Ins. Co. v. Allstate Ins. Co. 33 Misc. (2d) 530, 227 N. Y. S. (2d) 226.

A word such as "use" cannot be interpreted in a vacuum. Its meaning cannot be ascertained without reference to the context in which it is employed. It may have a general meaning encompassing any use of an object, or it may have a restricted meaning. Thus, as to the named insured, the policy undoubtedly covers any use of the owned automobile. As to another insured, it covers use only if driven with the permission of the named insured. Exclusion clause (g) applies only to an automobile used *in the automobile business*. It is the interpretation of the entire clause and not the interpretation of a single word of it that is decisive.

It seems quite obvious to us that when the clause formerly used, such as is found in Wendt v. Wallace, 185 Minn. 189, 240 N. W. 470, and Annotation, 47 A. L. R. (2d) 556, was abandoned in favor of the clause now before us, it was the intention of the insurer to broaden the coverage, not to restrict it. It must be assumed that insurance companies are familiar with court decisions. In view of the fact that several years have now elapsed since this clause first came before the courts for interpretation, it must have become apparent to the companies that if the decisions of the courts were not correct the language was, to say the least, ambiguous.

Many of the rules that we follow in interpreting insurance contracts are to be found in Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N. W. (2d) 855, 50 A. L. R. (2d) 108; Bobich v. Oja, 258 Minn. 287, 104 N. W. (2d) 19; and many other decisions of this court. One well-established rule which we follow is that where the language used in an insurance policy, which is chosen by the insurance company, is ambiguous or susceptible of two meanings, it must be given that meaning which is favorable to the insured. Bolduc v. New York Fire Ins. Co. 244 Minn. 192, 69 N. W. (2d) 660. The terms used in an insurance policy must be given their plain, ordinary, and popular meanings so as to effectuate the intention of the parties. Bobich v. Oja, *supra.* Applying these rules to the language we have before

us, we think the owner of this automobile would be quite astonished to learn that his car, while in the hands of the garage owner for repairs, was being used in the automobile business.

"Automobile business" is defined in the policy as follows:

" 'automobile business' means the business or occupation of selling, repairing, servicing, storing or parking automobiles."

When this definition is read as a part of exclusion (g), it becomes even more clear that the automobile was not being used in the automobile business. To paraphrase the definition as part of the exclusion, it would read that the provisions of the policy do not apply if the automobile is being used *in the business or occupation* of selling, repairing, servicing, storing, or parking automobiles. Clearly, it was not so used. While the named insured obviously consented to the necessary movement of the car, so as to bring Malkerson within the provisions of the policy requiring use of the car to be with the consent of the owner, she could hardly be held to have consented to the use of her car in furtherance of Malkerson's automobile business as defined in the policy.

It appears to us that the language of the policy is free from ambiguity and that the automobile while being driven on the premises of the garage for repairs was not being used in the automobile business. But if the language were ambiguous, it would have to be construed against the insurance company, leading to the same result. It follows that the decision of the trial court must be reversed.

Reversed.