Trolio, Appellant, *v.* McLendon; Allstate Ins. Co., Appellee.

(No. 39972—Decided March 1, 1967.)

*Messrs. Rickert & Fine* and *Mr. Raymond Fine*, for appellant. .

*Messrs. Stephens, Stephens & Wilkes* and *Mr. Bernard J. Wilkes*, for appellee.

Schneider, J. Henry Higgins bailed his automobile to Joe McLendon so that the latter could repair it, at the completion of which, McLendon "road-tested" the vehicle. During the course of that "road-test" in June 1961, an accident occurred involving personal injuries to and property damage sustained by Doris Trolio, who recovered a judgment therefor against McLendon.

After McLendon failed to pay, Trolio filed a supplemental petition to recover the judgment amount against appellee, Allstate Insurance Company, Higgins' automobile insurance carrier. The form of the policy involved is known as the "Allstate

Crusader" policy, only the pertinent provisions of which need be set forth.[1]

By Allstate's answer and oral stipulations, all the essential facts are admitted,[2] leaving for determination only the legal

---

[1]"Part 1.
"* * *

"Allstate will pay for *an insured* all damages which the insured shall be legally obligated to pay because of:

"A. Bodily injury sustained by any person, and

"B. Injury to or destruction of property, arising out of the ownership, maintenance or use, including loading and unloading, of the owned automobile or a non-owned automobile.
"* * *

"The following persons are *insured* under this Part

"1. The named insured with respect to the owned or a non-owned automobile;
"* * *

"3. *Any other person with respect to the owned automobile, provided the actual use thereof is with the permission of the named insured*;
"* * *

"Definitions of words used under this Part
"* * *

"3. Miscellaneous
"* * *

"(c) *'automobile business' means the business of selling, repairing, servicing, storing or parking of automobiles* * * *
"* * *

"Exclusions—what this Part of the policy does not cover

"This Part 1 does not apply to:
"* * *

"2. an owned automobile while *used in an automobile business*, but this exclusion does not apply to the named insured, a resident of the same household as the named insured, a partnership in which such named insured or resident is a partner, or any partner, agent or employee of such residence or partnership * * *."   (Italics supplied.)

[2]Although the question of Higgins' "permission" to McLendon to drive the car before, during or after completion of the repairs was not specifically mentioned in the pleadings, the case was apparently tried and argued on the theory that Higgins' bailment to McLendon for repairs carried with it implied permission to road-test the car, without regard to the nature of the repairs, the necessity of the test, or the specific consent, permission or request for the same by Higgins.   We accept that theory and our decision accordingly is grounded thereon.

Additionally, there is no issue of Higgins' vicarious liability since he was dismissed as a defendant in the second amended petition upon which the original judgment was granted.

issue of liability under the terms of the policy.

It is conceded that McLendon, although not the *named insured*, is nonetheless *an insured* within the meaning of the omnibus clause (paragraph 3 of Part I—persons insured), and Allstate is liable to the appellant under Part I, unless paragraph 2 of the "exclusions" is applicable.

Appellant's contention is accepted as correct and, as formulated in the syllabus, is pronounced as the rule of law controlling the disposition of this appeal. We therefore reverse the judgment below.

A comprehensive review of most of the cases which have been brought to our attention and which involve situations nearly identical to the instant one is to be found in *Hammer* v. *Malkerson Motors, Inc.* (1964), 269 Minn. 563, 132 N. W. 2d 174. There is an uncritical distinction in that case. The accident occurred as the vehicle, which had been brought to a garage for repairs by the customer, was being driven by an employee of the establishment from an outside parking lot into the garage proper.

On the other hand, *LeFelt* v. *Nasarow* (1962), 71 N. J. Sup. 538, 177 A. 2d 315, affirmed, 76 N. J. Sup. 576, 185 A. 2d 217, and extensively cited in *Hammer*, was a road-test case. It also contains an extended discussion of cases, in none of which did the insurer escape liability by reason of an identical exclusion provision in circumstances rationally related to this case.

It will, therefore, be useful merely to recall the principal grounds supporting the decisions in *Hammer* and *LeFelt*.

The exclusion clause with which we are concerned is relatively new in automobile insurance usage. 7 Appleman, Insurance Law and Practice, 341, Section 4372, discusses the older type of exclusion, one example of which is found in *Wendt* v. *Wallace*, 185 Minn. 189, 190, 240 N. W. 470, 471:

"This agreement shall exclude any obligation of the company * * * to any person or organization, other than the named assured, operating an automobile repair shop, public garage, sales agency or service station, and arising out of the operation thereof."

In the 1966 pocket parts to Section 4372 of Appleman, the distinction between the old and the new form of exclusion is recognized:

"A clause excluding automobiles used in the * * * automobile business, is to be distinguished from clauses discussed heretofore. An automobile brought in to be parked or to be repaired is not being used in the parking or automobile business."

See, also, annotation, 71 A. L. R. 2d 964 (Later Case Service).

"* * * If the accident had occurred while * * * [McLendon] was employing the automobile to obtain parts, or for delivery purposes or as a 'courtesy car' for the benefit of his customers, then he would indeed have been using this nonowned automobile in his business. However, this automobile was not being utilized or employed as an incident of his service or as a means, tool or adjunct for or on behalf of his auto repair business. This automobile, while being repaired, was the object of the defendant's business and not an incident or a tool being used therein." *Allstate Ins. Co.* v. *Skawinski,* 40 Ill. App. 2d 136, 140, 189 N. E. 2d 365, 367.

The word, "used," or the phrase, "used in," may be reasonably construed as meaning either to have employed the vehicle for one's own use or service, or to have used it in a general sense. See Webster's Third New International Dictionary. McLendon's use of the vehicle was no more a utilization to the automobile business in which he was obviously engaged, than a use merely incidental to the repairs.

"It seems quite obvious to us that when the clause formerly used, such as is found in *Wendt* v. *Wallace* [*supra*], 185 Minn. 189, 240 N. W. 470, and annotation, 47 A. L. R. 2d 556, was abandoned in favor of the clause now before us, it was the intention of the insurer to broaden the coverage, not to restrict it. It must be assumed that insurance companies are familiar with court decisions. In view of the fact that several years have now elapsed since this clause first came before the courts for interpretation, it must have become apparent to the companies that if the decisions of the courts were not correct the language was, to say the least, ambiguous." *Hammer* v. *Malkerson Motors, Inc., supra* (269 Minn. 563, 571).

That statement has even greater force in this appeal where Allstate has offered neither an explanation for the change in

language nor a suggestion of the exact purposes sought to be accomplished by the phraseology.

There is near unanimity of authority in our sister states.[3] Although highly persuasive, that circumstance is not binding upon us. But insurance policies of most, if not all, companies are issued in a multiplicity of states. A concordance in their interpretation is highly desirable. It is virtually mandated in order to prevent the anomaly which might have arisen out of a situation reported in *Capece* v. *Allstate Ins. Co.* (1965), 86 N. J. Sup. 462, 207 A. 2d 207, in which the factual differences from this case are unimportant. Allstate was there the insurer of McLendon's counterpart and State Farm Mutual Automobile Insurance Company was the insurance carrier of Higgins' counterpart. Allstate paid the judgment for the injuries against ''McLendon'' and, as subrogee, brought a third-party complaint against State Farm (under the rule of law found by this court in *Motorists Mutual Ins. Co.* v. *Lumbermans Mutual Ins. Co.*, 1 Ohio St. 2d 105). The policies of both State Farm and Allstate were identical to the instant policy and State Farm raised the same defense as Allstate does here. The *LeFelt case* controlled that issue on which Allstate prevailed. As a result, the latter is now in the position of claiming against its own success in New Jersey. This is untenable.

The judgment of the Court of Appeals is reversed and that of the Common Pleas Court is affirmed.

*Judgment reversed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT and BROWN, JJ., concur.

---

[3]In addition to Illinois, Indiana, Louisiana, Minnesota, New Jersey, and Washington, whose cases are cited either in this opinion or in those cases, the following are in accord:

New Hampshire: *Case* v. *Fidelity & Casualty Co. of New York* (1964), 105 N. H. 422, 201 A. 2d 897.

South Carolina: *American Fire & Casualty Co.* v. *Surety Indemnity Co.*, 246 S. C. 220, 143 S. E. 2d 371.

Utah: *National Farmers Union Property & Casualty Co.* v. *Farmers Ins. Group*, 14 Utah 2d 89, 377 P. 2d 786.

Apparently, only Virginia is contra:

*Universal Underwriters Ins. Co.* v. *Strohkorb*, 205 Va. 472, 137 S. E. 2d 913.