443 P.2d 385

Clover D. CHRISTENSEN and the Western Casualty & Surety Company, Plaintiffs and Appellants,

Mary V. Larsen, individually and as Guardian ad litem of Sandra Lee Larsen, a minor, Mary Kaye Larsen and Intermountain Service, Inc., Intervenors and Appellants,

v.

FARMERS INSURANCE EXCHANGE, Defendant and Respondent.

No. 11135.

Supreme Court of Utah.

July 5, 1968.

Strong & Hanni, Glenn C. Hanni, Worsley, Snow & Christensen, Raymond M. Berry, Salt Lake City, for appellants.

W. Brent Wilcox, Salt Lake City, for respondent.

ELLETT, Justice:

Dr. Vernon L. Stevenson carried insurance on his automobile with respondent, hereinafter called Farmers. The pertinent provisions of the policy are as follows:

Definition of "Insured" under Part 1

The unqualified word "insured" includes

(a) with respect to the described automobile,

(1) the named insured, and

(2) any other person while using such automobile and any other person or organization legally responsible for its use, provided the actual use of such automobile is by the named insured or with his permission; * * *

\* \* \* \* \* \*

Additional Definitions under Part 1
\* \* \* \* \* \*

(2) Automobile Business. "Automobile Business" means the business of selling, repairing, servicing, storing, washing, delivering, testing or parking automobiles, their parts or equipment.

\* \* \* \* \* \*

THIS POLICY DOES NOT APPLY UNDER PART 1:

\* \* \* \* \* \*

(6) while the described automobile is being used in the automobile business, * * *

The word "used" and the phrase "being used in" are not defined in the policy.

Dr. Stevenson requested Clover D. Christensen to install some new tie-rod ends on the automobile and to balance the wheels. The tie-rod ends were installed, but Christensen could not balance the wheels because his machine was out of order. He made arrangements by phone to have the wheels balanced by another concern, and while driving the car from his place of business to the one where the work was to be performed he was involved in an accident in which intervenors' decedent lost his life.

Farmers denied coverage under the exclusion provision of the policy, claiming that at the time of the accident the car was being "used in the automobile business" of Christensen. The trial court granted summary judgment to Farmers and denied plaintiffs' motion for summary judgment, and this appeal is from those rulings.

The provisions of this policy are of rather recent origin. Formerly, the insurance policies contained a provision excluding from coverage "any person, etc., operating an automobile repair shop, public garage, sales agency, service station or public parking place." Coverage was excluded without any consideration as to whether or not the automobile at the time of an accident was in fact being used in the automobile business.

The cases decided under the old policy provisions will not afford much assistance in the instant case, for here we must determine the meaning to be given to the phrase "being used in" the automobile business, and this phrase was not included in the older policies.

In interpreting an insurance policy, courts have uniformly resolved ambiguities, if any there be, in a policy strictly against

the insurer and in favor of the insured. Browning v. Equitable Life Assurance Society of United States, 94 Utah 532, 72 P.2d 1060; Jorgensen v. Hartford Fire Insurance Company, 13 Utah 2d 303, 373 P.2d 580.

The Utah Supreme Court had an occasion to contemplate the problem here posed in the case of National Farmers Union Property and Casualty Co. v. Farmers Insurance Group, 14 Utah 2d 89, 377 P.2d 786 (1963). There, a customer of a garage borrowed a privately owned car from a salesman to be used during the time his own car was being repaired and thereafter was involved in a collision. It was claimed that the coverage was excluded by reason of the automobile's being used in the automobile business. The lower court had found that the car was not being used in the automobile business, and this court refused to overturn that finding, saying, "The cases cited to this court which seem to be in point support this finding. These cases look at the use of the car from the standpoint of the driver."

It is believed that the first case in the Nation to construe the language in policies like the one now before us is McCree v. Jenning, 55 Wash.2d 725, 349 P.2d 1071 (1960). In that case Miller had repaired the insured's automobile. It needed gas in order to be delivered back to the owner. Miller's guest was driving the car to the gas station when it was involved in an accident. Judgment was against the insured, and in garnishment proceedings the insurer denied liability under a policy similar to the one involved in the instant case. The Washington Supreme Court at page 1072 said:

The appellant appears to have overlooked the significance of the word, "used" and to have assumed that any automobile in the possession or under the control of an automobile repairman would necessarily come within the exclusion. We do not so read the exclusion.

According to the pertinent definitions in Webster's New Twentieth Century Dictionary (2d ed.1957), the verb "to use" means "to put or bring into action or service; to employ for or apply to a given purpose." Synonyms are "employ, exercise, treat, practice, accustom, habituate, inure."

It would appear evident, therefore, that an automobile "used in the automobile business," would be one which was employed for some purpose in connection with that business. For example, a tow truck, an automobile used for demonstration purposes, or a vehicle used for securing or delivering equipment and supplies would be "used in the business." But the Jenning automobile was not turned over to Miller to be used by him for his business purposes. It was simply brought to him to be repaired.

In driving the Jenning automobile to the gas station, Farrell was not using it in the repair business, but was merely

accommodating a friend, who in turn was accommodating a customer.

This case was followed and approved in 1965 in the case of Northwestern Mutual Insurance Co. v. Great American Insurance Co., 66 Wash.2d 762, 404 P.2d 995. Many other jurisdictions have followed the holding of the McCree case, a few of which are hereinafter referred to.

In 1964 the New Hampshire Supreme Court was called upon to decide whether coverage was excluded in Case v. Fidelity and Casualty Company of New York, 105 N.H. 422, 201 A.2d 897. There, a mechanic was recharging a battery so a customer's car could be started. After the battery was recharged, the mechanic undertook to start the automobile, and in doing so he ran into the customer. The court action was one for declaratory judgment to determine if coverage was excluded on the basis that the car at the time was being used in the automobile business. At page 900 the court said:

Fidelity argues next that if Peppin was using the Case automobile with permission in making repairs he was necessarily using it in the automobile business and is excluded from coverage by the terms of its policy. By its definition "'automobile business' means the business or occupation of selling, repairing, servicing, storing or parking automobiles". * * *

Here again we test the language of the policy by the touchstone of what a reasonable person in the position of the insured would have understood this exclusion to mean. Lalos v. Tickler, 103 N.H. 292, 295, 170 A.2d 843. We are of the opinion that this language is not intended to exclude coverage because the automobile happens to be in the possession or under the control of a person whose business is automobiles. Nor can it reasonably be interpreted to deny coverage by the mere fact that a repairman is using a customer's car in the process of servicing it. On the contrary a reasonable person in the position of the insured would understand it to mean that coverage would be excluded when the automobile was employed for some purpose in connection with the automobile business. Plaintiff's car was at this service station to be repaired, not to be "used in the automobile business". [Citations omitted.]

In Capece v. Allstate Insurance Company, 86 N.J.Super. 462, 207 A.2d 207 (1965), Capece owned and operated a service station and garage. One of his customers brought in a car to be serviced and repaired. While the agent of Capece was driving the car onto the lift, his foot slipped from the brake onto the gas pedal, and Capece was injured. The trial court had found that the agent, Giordano, had permission to be driving the car at the time of the accident. The question was raised as to

whether the insurance coverage was excluded because the car was being used in the automobile business. The court at page 214 said:

> In disclaiming coverage, State Farm, in addition to its contention that Giordano lacked permission to use the Magnano automobile, relied upon an exclusion in the policy which removed bodily injury coverage from its terms, as to anyone but the named insured, when the car was used in the automobile business. The law is to the contrary. A customer's automobile which is left in the custody of the proprietor of a service station for servicing or repairs is not being used in the automobile business within the meaning of an exclusion clause such as the one here involved. * * *

The case of Trolio v. McLendon, 9 Ohio St.2d 103, 224 N.E.2d 117, was decided by the Ohio Supreme Court in 1967. That was a case where a repairman had a collision while road testing a customer's automobile after he had repaired it. The question on appeal was whether the policy of insurance excluded coverage because the car was being used in the automobile business. The court at page 119 held:

> The word "used," or the phrase "used in," may be reasonably construed as meaning either to have employed the vehicle for one's own use or service, or to have used it in a general sense. See Webster's Third New International Dictionary. McLendon's use of the vehicle was no more a utilization to the automobile business in which he was obviously engaged, than a use merely incidental to the repairs.

Malkerson Motors, Inc. v. St. Paul Fire and Marine Insurance Company, 269 Minn. 563, 132 N.W.2d 174 (1964), was a case where the owner left his car at a garage for repairs. While an employee of the garage was moving the car from where the customer had parked it into the garage, he was involved in an accident. The insurance company denied coverage under a policy like the one in the instant case. The court at page 179 disposed of the claim of exclusion in the following words:

> "Automobile business" is defined in the policy as follows:

> > " 'automobile business' means the business or occupation of selling, repairing, servicing, storing or parking automobiles."

When this definition is read as a part of exclusion (g), it becomes even more clear that the automobile was not being used in the automobile business. To paraphrase the definition as part of the exclusion, it would read that the pro-

visions of the policy do not apply if the automobile is being used *in the business or occupation* of selling, repairing, servicing, storing, or parking automobiles. Clearly, it was not so used. While the named insured obviously consented to the necessary movement of the car, so as to bring Malkerson within the provisions of the policy requiring use of the car to be with the consent of the owner, she could hardly be held to have consented to the use of her car in furtherance of Malkerson's automobile business as defined in the policy.

The case of Goforth v. Allstate Insurance Company, 327 F.2d 637 (Fourth Circuit 1964), was decided by a per curiam decision as follows:

> We agree with the District Court that a private automobile being driven from the place of business of the owner by a garage keeper to his garage for the purpose of effecting repairs requested by the owner was not being "used in the automobile business" within the meaning of an exclusion clause in the owner's liability insurance policy.

We are of the opinion that the court was in error in granting a summary judgment to the respondent in this case.

While ordinarily the denial of a motion for summary judgment is not appealable because it is not a final judgment, nevertheless when there are no issues of fact to be determined and the only dispute involves a question of law, we think this court has the duty and the power when a matter is before us to direct the lower court to enter a judgment according to the law of the case. Here the trial court ruled against the appellants and gave summary judgment to the respondent.

When a party moves for summary judgment, we think the court can give a judgment against him as well as for him when under the law such a ruling is required. See Carpineta v. Shields, 70 So.2d 573 (Fla.1954), and cases cited therein. While there is a division in the authorities (see 48 A.L.R.2d 1188), we think the better procedure is for the court to grant the appropriate relief when there is no unresolved issue of any material fact to be determined.

In the instant case all parties filed motions for summary judgment. This places the losing party in a more favorable position to have the court on appeal rule for him than if he had not filed a motion.

The appellants could not bring before this court on appeal the denial of their motions for summary judgment if that be all that was involved. However,

in the case of Foster v. Steed, 19 Utah 2d 435, 432 P.2d 60 (1967), we permitted an interlocutory appeal to be taken by one whose motion for summary judgment was erroneously denied. In that case we reversed the trial court's denial of summary judgment to the defendant and remanded the case.

Another problem confronting the court below was plaintiff's claim that the insurance carried by the defendant would be the primary insurance, while that of the non-owner driving the car would be secondary. We agree with this contention. See National Farmers Union Property and Casualty Co. v. Farmers Insurance Group, supra.

We, therefore, remand this case to the trial court with directions to set aside the summary judgment granted to respondent and to enter a summary judgment in favor of the appellants declaring that defendant's policy affords coverage to the automobile driven by Christensen and that such coverage is primary and the coverage of Western Casualty & Surety Company is secondary. Costs are awarded to appellants.

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur.

HENRIOD, J., concurs in the result.