JOHN D. GRAHAME *et al.,* Plaintiffs-Appellants, *v.* THOMAS MITCHELL *et al.,* Defendants-Appellees.

(No. 74-235; ▮▮▮▮▮▮)

Fifth District—March 31, 1975.

*Supplemental opinion upon denial of rehearing filed May 1, 1975.*

Reed, Armstrong, Gorman, and Coffey, of Edwardsville (James E. Gorman, of Counsel), for appellant Midwest Mutual Insurance Company.

Walker & Williams, P. C., of Belleville, (Roger L. Vetter and David B. Stutsman, of counsel), for appellee Farmers Insurance Exchange.

Mr. JUSTICE KARNS delivered the opinion of the court:

This appeal is from a declaratory judgment entered in the Circuit Court of Madison County construing provisions in a policy of automobile liability insurance issued by Farmers Insurance Exchange (Farmers). The facts are stipulated.

Appellant, Midwest Mutual Insurance Company (Midwest) insured Auto Driveaway Company, Inc., a company engaged in the business of transporting automobiles by use of the highways from place to place throughout the United States. Thomas Mitchell, owner of a 1965 Pontiac automobile, contracted with Auto Driveaway to have his automobile driven from Alamo, California, to Cockeysville, Maryland. Auto Driveaway entered into an agreement, denominated an "independent contractor agreement," with John D. Grahame whereby Grahame, for a consideration, agreed to drive Mitchell's automobile. On December 22, 1969, while enroute to Maryland, Grahame was involved in a multiple-vehicle accident as a result of which several actions for personal injuries and property damage were filed naming Auto Driveaway, Grahame and Mitchell as parties defendant.

Midwest insured Auto Driveaway for bodily-injury and property-

damage liability on automobiles in transit. The policy endorsement stated that the automobiles were used in the "handling or transportation of goods for another." The policy contained an "excess insurance" endorsement which provided that the insurance provided was excess insurance over and above other valid and collectible insurance for bodily-injury and property-damage liability on automobiles being transported by Auto Driveaway and its drivers. The status of the driver as an independent contractor employee is not important in the view we take of the case.

At the time of the occurrence, Mitchell was the named insured in a family automobile policy issued by Farmers. This policy insured against liability arising from the operation of the automobile by Mitchell and contained the "omnibus" clause in standard form which provided that the word "insured" included not only Mitchell but "any other person while using such automobile and any other person or organization legally responsible for its use, provided the actual use of such automobile is by the named insured or with his permission." A policy exclusion provided that omnibus coverage was not afforded "while the described automobile is being used in the automobile business." Automobile business was defined as "the business of selling, repairing, servicing, storing, washing, delivering, testing, or parking automobiles, their parts or equipment."

The action for declaratory judgment was brought by Midwest, Grahame and Auto Driveaway against Farmers, Mitchell and individuals who had actions for personal injuries pending.

It is plaintiff's position that the primary defense and insurance coverage of these several actions was with Mitchell's insurer, Farmers, and that the insurance coverage provided by Midwest, Auto Driveaway's insurer, is excess only, that is, excess to the insurance provided by the policy of Mitchell, the owner of the automobile involved in the collision.

An order was entered on February 13, 1974, that the automobile business exclusion in Farmers' policy applied to the facts as stipulated and the policy provided no coverage to the claims and actions arising out of the collision occurring on December 22, 1969; the order further provided that coverage was afforded by the policy of Midwest. This appeal followed.

While the meaning and applicability of the "automobile business exclusion" has been a subject of considerable litigation, the applicability of the exclusion to the business of transporting or delivering automobiles here involved is a novel question as far as we can determine. See Annot., 47 A.L.R.2d 556 (1956).

The exclusion takes several forms and has a long history in the auto-

mobile-liability-insurance business. It is referred to as the "automobile business exclusion," or "garage exclusion" in former terminology. The policies generally define the "automobile business" as in the instant case as the business of selling, repairing, servicing, storing or parking automobiles. Farmers' policy adds to this definition the "delivering" of cars, and it argues that this brings Auto Driveaway's business squarely within the policy exclusion.

The argument is that these businesses are attended with higher risks than the operation of a motor vehicle by a named individual for business or pleasure; that they present situations for a different and higher rate structure, allowing for the imposition of lower rates in family liability policies if these higher risks are excluded from coverage; and that the business of transporting or delivering automobiles involves the driving of the owner's car by strangers to whom the named insured has not given direct permission to drive and is therefore a "high risk" business.

There is a type of insurance, commonly referred to as "garage liability insurance," that covers the risks present in the business of selling, repairing and servicing cars, the type of activities commonly thought of as comprising the automobile business. It has been suggested, and we think with force, that the proper interpretation to be given the language of this exclusion in a family automobile policy is to exclude coverage of persons engaged in these businesses and the use of motor vehicles, whether tow-trucks, demonstrator cars or service vehicles, employed as an integral part of these businesses; that the coverage afforded by garage liability insurance and family automobile liability insurance is mutually exclusive. (*Christensen v. Farmers Insurance Exchange*, 21 Utah 2d 194, 443 P.2d 385 (1968); *Allstate Insurance Co. v. Skawinski*, 40 Ill.App.2d 136, 189 N.E.3d 365 (1963); *Truck Insurance Exchange v. State Farm Mutual Automobile Insurance Co.*, 182 Neb. 330, 154 N.W.2d 524 (1967).) These cases distinguish the operation of another's car by one engaged in the automobile business and the use of vehicles as an integral part of the business. In the former case, the automobile is the object or subject of the business and is not "being used in the business."

■■ In any event, the force of the "higher risk" argument is weakened at least so far as the law of this State is concerned by the interpretation of the standard omnibus clause, required for policies satisfying the Illinois Safety Responsibility Law. (Ill. Rev. Stat. 1973, ch. 95½, par. 7—317(b)1; ch. 73, par. 1000.) However, just what is required under the Illinois Safety Responsibility Law (Ill. Rev. Stat. 1973, ch. 95½, par. 7—301 *et seq.*), is certainly somewhat in doubt if we are to assume the continued viability of *McCann v. Continental Casualty Co*, 8 Ill.2d 476,

134 N.E.2d 302 (1956). It is now settled that once initial permission to use an automobile is given by the owner, all subsequent permitted use, however remote, is subject to coverage under the policy. *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.*, 54 Ill.2d 333, 297 N.E.2d 163 (1973).

As applied to the instant case, Mitchell, the owner, gave permission to Auto Driveaway to transport his automobile from California to Maryland. Auto Driveaway employed Grahame for this purpose. It is of no consequence that Mitchell did not know Grahame, and it makes no difference that Grahame be described as an employee of Auto Driveaway or as an independent contractor; the initial permission to use was express, as was Grahame's permission from Auto Driveaway.

Mitchell's insurer, Farmers, does not argue that Grahame and Auto Driveaway would not be additional insureds under the policy but for the operation of the automobile business exclusion. The fact that a bailment relationship was created, as Farmers argues, can have no effect on coverage under the policy.

■■ This brings us to the precise issue: Is the business of transporting automobiles as herein described within the automobile business exclusion of Farmers' policy? We hold it is not. Simply put, the business of Auto Driveaway is not the "automobile business" under the provisions of Farmers' policy, and Mitchell's automobile was not "being used in the automobile business" at the time of the accident.

The policy defines automobile business as the business of "selling, repairing, servicing, storing, washing, delivering, testing or parking automobiles." Farmers insists that the word "delivering" is a word of recent addition to the usual definition of automobile business; that it must be given meaning; and that to do so requires the court to include the transporting or delivering of automobiles from place to place, the very business activity involved here.

We think another construction more appropriate. Most litigation construing the automobile business exclusion arises from accidents occurring during the delivery of automobiles to or from service or repair facilities. An employee of these businesses is often called upon to pick up or deliver the owner's automobile at his home or business.

In the absence of the word "delivering" in defining automobile business, the cases are in sharp division on the question of coverage. In *Allstate Insurance Co. v. Universal Underwriters Insurance Co.*, 439 S.W.2d 385 (Tex. Civ. App. 1969), the Court of Civil Appeals of Texas held that a car being driven from the owner's place of business to an automobile dealer's garage by an employee of the garage was not being "used in the automobile business" under an exclusion which defined the automobile

business as the business of selling, repairing, servicing, storing or parking automobiles: "delivering" was not part of the definition. The court discussed *Goforth v. Allstate Insurance Co.,* 220 F.Supp. 616 (W.D.N.C. 1963), *aff'd,* 327 F.2d 637 (4th Cir. 1964). Since "transportation" was not included as one of the activities comprising the "automobile business," such service was not excluded from coverage. There, as here, the exclusion became operative because of the character of the use of the vehicle in the automobile business, and was not dependant additionally upon the status of the driver as an owner or employee of an automobile business. In *Truck Insurance Exchange v. State Farm Mutual Automobile Insurance Co.,* 182 Neb. 330, 154 N.E.2d 524 (1967), the policy exclusion was identical to that present here except "delivering" was not included as part of the definition of "automobile business." The court held that when the automobile was moved from a service station by a co-owner it was not "being used in" the automobile business but was the object or subject of the business.

In *Christensen v. Farmers Insurance Exchange,* 21 Utah 2d 194, 443 P.2d 385 (1968), the identical exclusion here involved was before the court. There, the automobile was involved in a collision while being driven by an employee of a garage to another garage for repairs. The court held that the automobile was not being used in the automobile business; that to be "used in the automobile business" would require that the vehicle be used as an integral part of the business. See 7 Appleman, Insurance Law and Practice § 4372 (1962).

On the other hand, other jurisdictions have held the exclusion in effect of the transporting or delivering were to or from an automobile business for the purpose of repairs or service. See *Western Casualty & Surety Co. v. Verhulst,* 471 S.W.2d 187 (Mo. 1971); *Nationwide Mutual Insurance Co. v. McAbee,* 268 N.C. 326, 150 S.E.2d 496 (1966); *Universal Underwriters Insurance Co. v Strohkorb,* 205 Va. 472, 137 S.E.2d 913 (1964).

The Illinois cases construing the automobile business exclusion fall generally into the latter group; although, this court is more persuaded by the decision in *Christensen.* In *Universal Underwriters Insurance Co. v. Northwestern National Insurance Co.,* 306 F.Supp. 437 (S.D. Ill. 1969), the policy provided that it would not be in effect while the automobile was "used by any person while such person is employed or otherwise engaged in the automobile business." The automobile business was defined as the business of selling, repairing, servicing, storing or parking automobiles. The court held the exclusion applicable where an accident occurred while an employee of an automobile agency, a salesman, was returning an automobile to the owner upon completion of repairs. It

should be observed, however, that the exclusion focused on the operation by a person who was employed in the automobile business. An exclusion based only on use is less restrictive than one based on the occupation of the operator.

*Caster v. Motors Insurance Corp.*, 28 Ill.App.2d 363, 171 N.E.2d 425 (1961), is in accord in holding that this type of exclusion applies to accidents arising from the operation of an automobile by one whose occupation is the automobile business while the vehicle is so employed. The court stated that "[t]he obvious interpretation of [the] exclusion must have particular reference to the occupation of the named insured, and if the insured is engaged in any of those businesses he must purchase a different type of insurance or insure himself against loss for damage which would occur to automobiles of his customers while he or one of his agents is operating the customer's car." 28 Ill.App.2d 363, 367.

In *Universal Underwriters Insurance Co. v. Farmers Insurance Exchange*, 17 Ill.App.3d 386, 308 N.E.2d 288 (1974), the court held the automobile business exclusion applicable to accidents occurring during road tests of automobiles by mechanics who had made repairs. The test was a customary service, performed largely to find if any other repairs were needed. It was done without express permission of the owner by the mechanic who received a commission from the automobile agency on the total cost of repair work. The court found the automobile was being used in the automobile business at the time of the accident and no coverage attached under the policy.

We believe the Illinois cases from other districts would hold the exclusion applicable on the facts presented here if the business of transporting or delivering automobiles could be said to be the "automobile business." *Walker v. State Farm Mutual Automobile Insurance Co.*, 40 Ill.App..2d 463, 190 N.E.2d 121 (1963); *State Farm Insurance Co. v. Mohan*, 85 Ill.App.2d 10, 228 N.E.2d 283 (1967).

However, we do not interpret the definition of "automobile business" in Farmers' policy to include Auto Driveaway Company's business activity. The addition of the term "delivery" in defining the activities constituting the "automobile business" does not expand the meaning of that expression. The exclusion has a long history in the automobile-liability-insurance industry. The addition of the word "delivery" in defining the automobile business does not enlarge the meaning of "automobile business" without a more definite expression of meaning in the insurance contract itself.

■■ The terms used in a contract of insurance are to be given the ordinary, plain, popular meaning. We will not enlarge the accepted meaning of "automobile business." If the insurer intended to include the

business of transporting or delivering automobiles, it had knowledge that such business did exist and the expertise to include expressly such business with the policy exclusions. Ambiguities are to be resolved in favor of coverage; exclusions from coverage are to be construed narrowly. *Lumbermen's Mutual Casualty Co. v. Norris,* 15 Ill.App.3d 95, 303 N.E.2d 505 (1973); *Michigan Mutual Liability Co. v. Hoover Bros., Inc.,* 96 Ill.App.2d 238, 237 N.E.2d 754 (1968).

While we are persuaded by the logic of *Christensen* that this exclusion is intended only to require persons engaged in the automobile business to purchase standard garage owners' liability policies, we need only decide in the instant case that the business of Auto Driveaway was not the "automobile business" as defined in Farmers' policy of insurance; accordingly, Mitchell's automobile was not being "used in the automobile business" at the time of the accident giving rise to the instant claims and actions.

We therefore hold that the policy of Farmers does provide insurance coverage on the factual situation stipulated by the parties. Accordingly, the judgment of the Circuit Court of Madison County is reversed.

Reversed.

EBERSPACHER and G. MORAN, JJ., concur.

## SUPPLEMENTAL OPINION

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiffs-appellants have filed in this court a petition to modify the opinion and order, and defendants-appellees have filled a petition for rehearing. Plaintiffs ask that the order reversing the judgment of the trial court be modified by adding directions. Defendants question our opinion and ask for rehearing. While we believe that the matters raised in the petition for rehearing present a close question, we adhere to our opinion and judgment.

The position of the plaintiffs-appellants is that the dispositional order of the court might be interpreted to mean that the policy of Midwest did not afford any coverage and that it could be argued that Midwest acted as a volunteer in defending after Farmer's refusal to do so. We do not feel that the opinion could be so misconstrued. Plaintiffs also ask us to dispose of matters not litigated in the trial court, as far as we can determine. This we decline to do. We however modify our opinion to the extent that we hold that under the facts stipulated the policy of Farmer's provides primary insurance coverage and that the coverage afforded by Midwest is excess to that of Farmer's.

We recognize that there may be issues pending of costs, expenses and expenditures left undetermined, and accordingly the judgment of the Circuit Court of Madison County is reversed and the cause remanded for further proceedings consistent with the opinion and supplemental opinion on denial of rehearing.

Reversed and remanded.

EBERSPACHER and G. MORAN, JJ., concur.